**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DONALD CONWELL (#2012-0607038), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 12 cv 10062 |
| ) | |
| COMMANDER J. K. JOHNSEN; ) | Honorable Judge Ruben Castillo |
| LIEUTENANT N. BOWENS (Badge #219); ) | |
| SERGEANT DARNICE WIGGINS (#1189); ) | |
| OFFICERS R. SMITH (#9518); JENNIFER ) | |
| JEFFERSON (#9068); WILLIAM BAKER ) | |
| (#8310); JOSE TISCARENO (#9521); M. ) | |
| OLAVARRIA (#9473); RAMONITA ) | |
| PEREZ (#8466); R. ROMERO (#8802); ) | |
| OFFICER JIMMY CHAPMAN; OFFICER ) | |
| JOHN MALLOY; and JOHN DOES 1-4, ) | |
| correctional officers and supervisors, Cook ) | |
| County Jail, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT

Plaintiff, Donald Conwell ("Mr. Conwell"), by his undersigned attorneys, complains against the above-named defendants as follows:

### INTRODUCTION

1. Mr. Conwell, a disabled pretrial detainee at the Cermak Hospital within the Cook County Jail, seeks damages for injuries he suffered as a result of the misconduct of several Cook County Jail correctional officers and supervisors. Specifically, Mr. Conwell seeks damages for: (1) a March 12, 2012 attack by Defendants Jefferson, Baker, Tiscareno, Olavarria, which violated 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution; (2) Defendant Perez's failure to intervene in the March 12 attack, which violated 42 U.S.C.

§ 1983 and the Fourteenth Amendment; and (3) injuries Mr. Conwell sustained as a result of the deliberately indifferent and collective failure of Defendants Bowens, Smith, Tiscareno, Romero, Chapman, Malloy, and John Does 1-4 to shield Mr. Conwell from a known risk of attack by fellow detainees, which resulted in two separate attacks on February 5, 2012, and October 25, 2012, and violated 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Counts I to IV in this Complaint under 28 U.S.C. §§ 1331 and 1343(a)(3). This action arises under the Civil Rights Act (42 U.S.C. § 1983) and the Constitution of the United States.

3. This Court has supplemental jurisdiction over Counts IV to VII under 28 U.S.C. § 1367, as they arise from the same set of operative facts as those that form the basis for Mr. Conwell's claims under 28 U.S.C. § 1983.

4. Defendants work and, on information and belief, reside in this district. The events or omissions giving rise to this claim occurred in this district. Thus, venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

5. Plaintiff, Mr. Conwell, is, and was at all times relevant to this complaint, a citizen of the United States and a resident of the City of Chicago, located in Cook County, Illinois. At all relevant times in this complaint, Mr. Conwell has been a pretrial detainee at Cermak Hospital at the Cook County Jail.

6. During the events described in this lawsuit, Mr. Conwell held two different detainee identification numbers. From 2011 until April 18, 2012, Mr. Conwell was identified by

detainee number 2011-1209170. He then spent two months in Dixon Correctional Center as a result of charges stemming from the March 12, 2012 incident, which is described below. Following his stay at Dixon Correction Center, Mr. Conwell returned to the Cook County Jail with a new detainee identification number, 2012-0607038. He remains in custody.

7. On information and belief, Defendant Johnsen was, at all times relevant to this complaint, employed as a Commander of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

8. On information and belief, Defendant Bowens was, at all times relevant to this complaint, employed as a Lieutenant of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

9. On information and belief, Defendant Wiggins was, at all times relevant to this complaint, employed as a Sergeant of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

10. On information and belief, Defendant R. Smith was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

11. On information and belief, Defendant Jefferson was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

12. On information and belief, Defendant Baker was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

13. On information and belief, Defendant Tiscareno was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

14. On information and belief, Defendant Olavarria was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

15. On information and belief, Defendant Perez was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

16. On information and belief, Defendant Romero was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

17. On information and belief, Defendant Chapman was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

18. On information and belief, Defendant Malloy was, at all times relevant to this complaint, employed as an Officer of the Cook County Jail and was acting under color of state law in the capacity of agent, servant, and employee of the Cook County Jail.

19. The County of Cook, which maintained, managed or operated the Cook County Jail, is a municipality duly incorporated under the laws of the State of Illinois.

## BACKGROUND

*General Background*

20. Mr. Conwell is disabled as the result of a 2007 attack in the Cook County jail. He has limited mobility, uses a wheelchair as a resource, and has a limited use of his hands. For example, he is unable to clench his fingers into a fist. Mr. Conwell also suffers from poor vision in his right eye as a result of the 2007 attack.

21. Following the 2007 attack, Mr. Conwell has constantly feared for his safety while confined to the Cook County Jail. After being admitted to the jail in 2011, Mr. Conwell requested placement in protective custody. Mr. Conwell regularly informed prison staff of his fear of retaliation by officers or attacks by other prisoners, including by writing written grievances. After Mr. Conwell's 2007 injuries in the Cook County jail, he filed a federal lawsuit against a number of jail officers who were involved in the incident. That lawsuit was ultimately dismissed for lack of prosecution.

22. Mr. Conwell has also filed numerous internal grievances against various officers at the Cook County jail.

23. As a result of Mr. Conwell's 2007 lawsuit and other grievances, many officers at the Cook County jail feel and express animus toward Mr. Conwell. For example, as alleged below, one defendant expressed satisfaction upon observing Mr. Conwell's injuries.

24. On information and belief, based on the fact that Mr. Conwell has been attacked by prison guards and fellow detainees many times, there exists between many officers of the Cook County jail – including between all defendants – an agreement to violate Mr. Conwell's civil rights, to ignore his legitimate needs, and to ignore risks to his health and safety.

25. As alleged below, parties to that agreement have participated in overt acts in furtherance of that agreement.

26. As a result of this agreement, Mr. Conwell has been injured. For example, he has sustained three physical attacks, described below, and suffers from significant anxiety and emotional distress.

*The February 6, 2012 Attack by Richard Brooks*

27. On or about February 5, 2012, after receiving medical treatment, Mr. Conwell was returned to the Cermak division. Mr. Conwell complained to a female officer about the unsanitary condition of his cell and asked to be moved to a new cell within the 3 South unit within Cermak, which was at that time used for inmates in protective custody. The female officer refused to have the cell cleaned, and Mr. Conwell requested that she call a supervisor.

28. Defendant Bowens then removed Mr. Conwell from his cell in 3 South, but instead of placing Mr. Conwell in another protective-custody cell, Defendant Bowens placed Mr. Conwell in the 3 West unit in the general prison population.

29. Mr. Conwell repeatedly asked Defendant Bowens not to put him into the general population because he feared for his safety and was in protective custody.

30. When Defendant Bowens placed Mr. Conwell in the general population, he stated, in the presence of other inmates, that Mr. Conwell was a "snitch" knowing his statement would be heard by other prisoners.

31. The next day, on February 6, 2012, Mr. Conwell told Defendant Smith and Defendant John Doe #1 that he was in fear for his safety and that he belonged in protective custody. Defendants Smith and Doe told Mr. Conwell there was nothing he could do.

32. Shortly thereafter, Mr. Conwell was attacked by detainee Richard Brooks (#2011-1109-241).

33. Mr. Brooks struck Mr. Conwell with a closed fist four times and, after Mr. Conwell fell from his wheelchair to the ground, Mr. Brooks stomped on Mr. Conwell multiple times.

34. Other detainees, recognizing the severity of the attack, told Mr. Brooks not to kill Mr. Conwell.

35. As a result of the attack, Mr. Conwell suffered a fractured bone in his left eye socket and required medical treatment at Stroger Hospital. Mr. Conwell continues to experience pain and twitching in his left eye. He also suffers from severe back pain as a result of the February 6, 2012 attack.

*The March 12, 2012 Attack by Prison Guards*

36. On or about March 12, 2012, Defendant Jefferson informed Mr. Conwell that he would be moved from cell 3115 to cell 3137 in the Cermak Hospital isolation unit.

37. Cell 3137 was unsanitary on March 12, 2012. It had a malfunctioning toilet, and water was leaking out of the sprinkler and the sink and pooling on the floor.

38. Mr. Conwell requested that he not be moved because cell 3137 was unsanitary. Mr. Conwell asked Defendant Jefferson to call a supervisor, or, alternatively, to obtain a video camera and document the condition of the cell and Mr. Conwell's exchanges with the officers regarding the condition of the cell.

39. Defendants Baker and Tiscareno, who had been observing the exchange, entered Mr. Conwell's cell.

40. Defendants Baker and Olavarria forcefully removed Mr. Conwell from his wheelchair and allowed Mr. Conwell to fall to the floor.

41. Defendant Baker punched Mr. Conwell in the head multiple times while Mr. Conwell was on the floor.

42. Defendant Jefferson kicked Mr. Conwell in the face while Mr. Conwell was on the floor.

43. Defendant Tiscareno jumped on Mr. Conwell's back and choked Mr. Conwell while Mr. Conwell was on the floor. Mr. Conwell lost consciousness as a result of the beating.

44. Defendant Perez observed the beating and did nothing to stop the beating.

45. When Mr. Conwell regained consciousness, he had been dragged from cell 3115 to cell 3137 by Defendants Tiscareno and Baker. He was handcuffed. Mr. Conwell had been dragged at least thirty feet between the time he lost consciousness and the time he regained consciousness.

46. When Mr. Conwell regained consciousness, he was bleeding from his mouth and his throat and neck were very sore. He had blood-clots in both of his eyes, and his left eye was re-injured.

47. Mr. Conwell received treatment from Dr. Defuniak in his cell on March 12, 2012. Dr. Defuniak referred Mr. Conwell to Stroger Hospital.

48. Mr. Conwell received treatment at Stroger Hospital.

49. As a result of the attack, Mr. Conwell suffered an injury to his left ear and to his neck and back, and continues to experience pain in those areas. Mr. Conwell suffers from anxiety and fear as a result of the attack. Mr. Conwell also has difficulty sleeping as a consequence of the injuries he sustained during the attack.

*The October 25, 2012 Attack by Kevin Dawson*

50. On August 30 and 31, 2012, detainee Kevin Dawson threatened to injure Mr. Conwell by posting letters and notes in his cell window and by making throat-cutting gestures toward Mr. Conwell. Mr. Conwell notified prison officers of Mr. Dawson's threats.

51. Defendant Tiscareno regularly communicated with detainee Kevin Dawson and, on information and belief, encouraged Mr. Dawson's animus toward Mr. Conwell. Indeed, on information and belief, Defendant Tiscareno occasionally provided contraband to Mr. Dawson. For example, on August 31, 2012, Mr. Conwell observed Defendant Tiscareno give an object to Mr. Dawson that may have been a knife. Mr. Conwell complained of this incident via an inmate grievance form on September 4, 2012.

52. As a result of Mr. Conwell's complaints, Commander J.K. Johnsen posted a memorandum ordering that Mr. Conwell and Mr. Dawson be kept separate.

53. On or about October 25, 2012, Defendant Romero told Mr. Conwell, so as to be heard by detainee Kevin Dawson in the next cell, that Mr. Conwell had a court appearance that day. Defendant Romero then told Mr. Dawson that Mr. Dawson also had a court appearance that day.

54. Mr. Conwell told Defendant Romero that he was to be kept separate from Mr. Dawson, pursuant to the keep-separate memorandum that was on file at the officer's desk. Mr. Conwell asked Defendant Romero if Mr. Conwell could speak with a supervisor, Sergeant Wiggins. Mr. Conwell told Defendant Romero that he feared that Mr. Dawson had weapons and contraband on his person and intended to attack Mr. Conwell. Defendant Romero said that Mr. Conwell would see Sergeant Wiggins in the Cermak waiting area and did not take any action to keep Mr. Conwell and Mr. Dawson separate.

55. Mr. Conwell was pushed in his wheelchair to the Emergency Room waiting area immediately outside the entrance to Cermak Health Services. Mr. Dawson was also waiting in a wheelchair in the same area. In the waiting area, Mr. Conwell told Defendants Chapman and Malloy about the keep-separate order and stated that he feared for his safety.

56. Defendants Chapman and Malloy did not move either Mr. Conwell or Mr. Dawson to a different area.

57. A few minutes later, Mr. Dawson pulled an arm from Mr. Dawson's own wheelchair and used it to hit Mr. Conwell in the chest.

58. Defendants John Doe 2 and 3 took the wheelchair arm from Mr. Dawson but did not separate Mr. Dawson and Mr. Conwell.

59. A few minutes later, Mr. Dawson removed the other arm from his wheelchair and raised it as if to throw it at Mr. Conwell.

60. Prison officers, including Defendants Chapman, Malloy, and John Does 2-4, observed Mr. Dawson attempting to injure Mr. Conwell with the arms of his wheelchair but did not separate Mr. Conwell and Mr. Dawson.

61. A few minutes later, Mr. Dawson lunged out of his wheelchair holding a metal knife in his left hand.

62. Mr. Dawson stabbed Mr. Conwell in his right upper forearm, close to his brachial artery, and Mr. Conwell began bleeding heavily. Mr. Conwell's blood pooled on his shoes, clothing, and the floor.

63. Defendant Malloy observed the stabbing and said "hopefully [Dawson] cut the vein" but did not attempt to help Mr. Conwell.

64. Defendant Chapman observed the stabbing and did not respond to it.

65. Although Mr. Conwell was immediately outside the entrance to Cermak Health Services when he was stabbed, Defendants Chapman, Malloy, and John Does 2-4 did not seek immediate medical attention for Mr. Conwell. Nor did they remove Mr. Dawson from the area.

66. Defendants did not take Mr. Conwell into the Emergency Room, which was only feet away from the location where Mr. Conwell was stabbed, for treatment until thirty to forty minutes after the stabbing. Indeed, Defendants took Mr. Dawson, who was uninjured, into the Emergency Room before taking Mr. Conwell into the Emergency Room.

*Exhaustion of Remedies*

67. Mr. Conwell exhausted all available administrative remedies prior to bringing this suit in federal court.

## Count I

**42 U.S.C. § 1983: Use of Excessive Force in Violation of the Fourteenth Amendment Against Defendants Baker, Tiscareno, Jefferson, and Olavarria**

68. Mr. Conwell realleges paragraphs 1 through 67 as if fully stated herein.

69. Mr. Conwell has a clearly-established right under the Fourteenth Amendment to the United States Constitution to be free from excessive force and summary punishment without due process of law.

70. As set forth above, Defendants Baker, Tiscareno, Jefferson, and Olavarria used excessive and brutal force against Mr. Conwell on March 12, 2012.

71. In light of the facts and circumstances confronting the Defendants, their use of force was excessive and unreasonable.

72. Defendants Baker, Tiscareno, Jefferson, and Olavarria, while acting under color of state law, intentionally, maliciously, recklessly or with deliberate indifference or reckless

disregard deprived Mr. Conwell of his constitutionally-protected right to be free from the use of excessive force and summary punishment.

73. As a direct and proximate result of the defendants' use of excessive force and administration of summary punishment, Mr. Conwell suffered substantial injury. Accordingly, Defendants Baker, Tiscareno, Jefferson, and Olavarria are liable to Mr. Conwell under 42 U.S.C. § 1983.

### Count II

**42 U.S.C. § 1983: Failure To Intervene In The Deprivation Of Mr. Conwell's Constitutionally Protected Rights To Be Free From Excessive Force Against Defendant Perez**

74. Mr. Conwell realleges paragraphs 1 though 73 as if fully stated herein.

75. Mr. Conwell has clearly-established rights under the Fourteenth Amendment to be free from excessive force and to be free from summary punishment without due process of law. Defendant Perez failed to intervene to prevent Mr. Conwell's injuries on March 12, 2012.

76. Defendant Perez had numerous opportunities to intervene to prevent injury to Mr. Conwell but failed to do so.

77. Defendant Perez, while acting under color of state law, intentionally, maliciously, recklessly or with deliberate indifference or reckless disregard deprived Mr. Conwell of his constitutionally-protected rights.

78. As a direct and proximate result of Defendant Perez's failure to intervene, Mr. Conwell suffered substantial injury. Accordingly, Defendant Perez, is liable to Mr. Conwell under 42 U.S.C. § 1983.

## Count III

**42 U.S.C. § 1983: Deliberate Indifference to a Known Risk of Attack by Detainees Against Defendants Bowens, Smith, Tiscareno, Romero, Chapman, Malloy, and John Does 1-4**

79. Mr. Conwell realleges paragraphs 1 though 78 as if fully stated herein.

80. As a pretrial detainee at the Cook County Jail, Mr. Conwell has a clearly-established right under the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to a known risk of serious harm. Defendants Bowens, Smith, Tiscareno, Romero, Chapman, Malloy, and John Does 1-3 deliberately ignored the known risk of attack by fellow inmates, which resulted in Mr. Conwell being attacked on February 5 and October 25, 2012.

81. Defendants Bowens, Smith, Tiscareno, Romero, Chapman, Malloy, and John Does 1-3, while acting under color of state law, intentionally, maliciously, recklessly or with deliberate indifference or reckless disregard deprived Mr. Conwell of his constitutionally-protected rights.

82. As a direct and proximate result of Defendant Bowens, Smith, Tiscareno, Romero, Chapman, Malloy, and John Does 1-3's failure to intervene, Mr. Conwell suffered substantial injury. Accordingly, Defendants Bowens, Smith, Tiscareno, Romero, Chapman, Malloy, and John Does 1-3 are liable to Mr. Conwell under 42 U.S.C. § 1983.

## Count IV

**42 U.S.C. § 1983: Deliberate Indifference to Mr. Conwell's Serious Medical Needs Against Defendants Chapman, Malloy, and John Does 2-4**

83. Mr. Conwell realleges paragraphs 1 through 82 as if fully stated herein.

84. As a pretrial detainee at the Cook County Jail, Mr. Conwell has a clearly established right under the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to a serious injury or medical need.

85. Mr. Conwell suffered objectively serious medical injuries and had medical needs as a result of the beatings on February 5, March 12, and October 25, 2012.

86. As described in the foregoing paragraphs, Defendants Chapman, Malloy, and John Does 1-3 intentionally and with deliberate indifference denied or delayed access to medical care after Mr. Conwell was beaten and had objectively serious medical needs that required treatment. Defendants Chapman, Malloy, and John Does 1-3 exhibited deliberate indifference to Mr. Conwell's objectively serious medical needs, acting under color of state law, and violated Mr. Conwell's rights under the Fourteenth Amendment to the United States Constitution. The conduct of Defendants Chapman, Malloy, and John Does 1-3 was willful and exhibited a flagrant disregard for Mr. Conwell's constitutionally protected rights.

87. As a direct and proximate result of the foregoing actions of Defendants Chapman, Malloy, and John Does 1-3, Mr. Conwell suffered substantial personal injuries and is entitled to damages under 42 U.S.C. § 1983.

## Count V

### Battery
### Against Defendants Baker, Tiscareno, Jefferson, and Olavarria

88. Mr. Conwell realleges paragraphs 1 through 87 as if fully stated herein.

89. Defendants Baker, Tiscareno, Jefferson, and Olavarria intended to make offensive and harmful contact with Mr. Conwell.

90. Defendants Baker, Tiscareno, Jefferson, and Olavarria made bodily contact with Mr. Conwell without valid cause.

91. Mr. Conwell was injured as a proximate result of Defendants' conduct.

## Count VI

**Assault**
**Against Defendants Baker, Tiscareno, Jefferson, and Olavarria**

92. Mr. Conwell realleges paragraphs 1 through 91 as if fully stated herein.

93. Defendants Baker, Tiscareno, Jefferson, and Olavarria intended to harm or frighten Mr. Conwell.

94. Defendants Baker, Tiscareno, Jefferson, and Olavarria, through their actions or gestures, created apprehension in Mr. Conwell.

95. Mr. Conwell was injured as a proximate result of his fear or apprehension of imminent contact from Defendants.

## Count VII

**Civil Conspiracy**
**Against All Defendants**

96. Mr. Conwell realleges paragraphs 1 through 95 as if fully stated herein.

97. There existed, among Defendants Bowens, Smith, Jefferson, Baker, Tiscareno, Olavarria, Perez, Romero, Chapman, Malloy, Wiggins, Johnsen, Does 1-4, and other officers of the Cook County Jail, an agreement and common scheme to violate the civil rights of Mr. Conwell, to place him in harm's way, and to fail to shield him from attack by detainees.

98. The existence of this agreement can be inferred from the fact that Mr. Conwell was attacked by other detainees twice, and attacked by guards once, within eight months' time.

99. Parties to the agreement participated in overt acts in furtherance of the common scheme, including the following (1) on March 12, 2012, Defendants Jefferson, Baker, Tiscareno, and Olavarria attacked Mr. Conwell; (3) Defendants Bowens, Smith, Tiscareno, Romero,

Chapman, Malloy, and John Does 1-4 caused Mr. Conwell to be exposed to other detainees, even when Mr. Conwell warned them that he was likely to be injured, and failed to intervene when he was attacked.

100. Mr. Conwell suffered injuries as a result of the overt acts of the parties to the agreement.

These overt acts were done pursuant to and in furtherance of the common scheme.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Conwell prays that this Court:

(a) Declare that the policies, practices, and acts complained of are illegal and unconstitutional;

(b) Preliminarily and permanently enjoin all Defendants from engaging in the policies, practices, and acts complained of by Mr. Conwell in this Consolidated Amended Complaint;

(c) Award compensatory damages from all Defendants in an amount to be determined at trial;

(d) Award punitive damages from all Defendants in an amount to be determined at trial;

(e) Award reasonable attorney's fees, costs, and expenses, pursuant to 42 U.S.C. § 1988; and

(f) Award other such relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff Donald Conwell, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands a trial by jury on all issues in this case.

Respectfully submitted,

DONALD CONWELL

Dated: October 22, 2013        By:    \s\ *David J. Bradford*
                                                      One of his Attorneys

David J. Bradford (ARDC #0272094)
dbradford@jenner.com
Melissa M. Hinds (ARDC #6288246)
mhinds@jenner.com
Caroline A. Lindsey (ARDC #6309554)
clindsey@jenner.com

**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 840-7375