aEE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD CONWELL, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 12 C 10062 |
| v. | ) ) |
| | ) Chief Judge Rubén Castillo |
| COOK COUNTY, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is an amended complaint filed by Donald Conwell ("Plaintiff"), a *pro se* prisoner, pursuant to 42 U.S.C. § 1983, naming a host of defendants located at the Cook County Jail ("the jail"). (R. 60, Compl.) Under 28 U.S.C. § 1915A, the Court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the Plaintiff's allegations as true and drawing all inferences in his favor. *See Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014); *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, a plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by

the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Nevertheless, a *pro se* complaint is entitled to liberal construction, "however inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## PROCEDURAL HISTORY

This is Plaintiff's third attempt to state his claims. He originally brought this action *pro se*, and after reviewing the complaint the Court recruited counsel to represent him. (R. 5, Min. Entry.) Counsel later sought to withdraw, and the Court granted his motion. (R. 8, Min. Entry.) New counsel was recruited to represent Plaintiff, and counsel subsequently filed an amended complaint on Plaintiff's behalf.[1] (*Id.*; R. 12, Compl.) After an answer was filed and various other proceedings occurred, counsel sought to withdraw, due to an apparent disagreement over the scope of counsel's representation and the strategies to be employed in this case. (*See* R. 46, Mot. to Withdraw; *see also* R. 58, Mot. for Appoint. of Counsel at 8.) The Court granted counsel's request to withdraw, and directed Plaintiff to file an amended complaint if he intended to proceed with this action. (R. 49, Min. Entry.) Plaintiff responded by filing the present complaint. (R. 60, Compl.)

## RELEVANT FACTS

In the detailed 36-page complaint, Plaintiff claims he was subjected to a campaign of harassment by staff at the jail during 2012 and 2013.[2] (R. 60, Compl.) He sues more than 30 different members of the correctional staff, as well as Cook County Sheriff Tom Dart and

---

[1] Per the Court's instructions, counsel filed a consolidated complaint that encompassed Plaintiff's claims in this case, as well as in *Conwell v. County of Cook, et al.*, No. 1:12cv10063 (N.D. Ill. filed Dec. 18, 2012) and *Conwell v. County of Cook, et al.*, No. 1:13cv355 (N.D. Ill. filed Jan. 16, 2013). (*See* R. 8, Minute Entry.)

[2] Plaintiff is no longer at the jail, as he was transferred to the custody of the Illinois Department of Corrections ("IDOC") in June 2014. (R. 54, Notice of Address Change.)

2

various other jail officials. (*Id.* at 4-8.) Plaintiff claims that during a prior period of incarceration at the jail in 2007, he was beaten by jail guards; as a result he is in a wheelchair and has impairments with his hands and eye. (*Id.* at 9.) He claims that he filed a lawsuit pertaining to the beating, which was ultimately dismissed for lack of prosecution. (*Id.* at 9-10.) He alleges that because of his prior lawsuit, as well as numerous grievances he filed during his incarceration at the jail, jail staff developed an "animosity" toward him. (*Id.* at 9.) Because of this animosity, he claims numerous jail staff purposely allowed him to be attacked by other inmates, subjected him to incidents of excessive force, and exposed him to substandard conditions of confinement. (*Id.* at 9-35.) He describes several discrete incidents in support of his claims, which are outlined below.

In February 2012, jail guard Lieutenant N. Bowens allegedly announced in front of other inmates that Plaintiff was a "snitch." (*Id.* at 11.) Plaintiff thereafter requested to be placed in protective custody, but Lieutenant Bowens denied his request, as did Officers R. Smith and an unnamed jail guard (identified as "John Doe #1"). (*Id.*) Plaintiff remained in the general population, and shortly thereafter was attacked by another inmate, Richard Brooks. (*Id.*) He claims to have suffered a fractured facial bone and other injuries as a result of the attack. (*Id.*)

In March 2012, Plaintiff got in a dispute with another jail guard, Officer Jennifer Jefferson, about his housing assignment. (*Id.* at 12.) Officers William Baker, Jose Tiscareno, and M. Olavarria allegedly overheard this dispute, became angry, and pulled Plaintiff out of his wheelchair. (*Id.*) He claims they choked him and kicked him in the face while he was lying on the ground. (*Id.* at 12-13.) Officer Ramonita Perez, another jail guard, allegedly stood by during this beating and did nothing to intervene, instead acting as a "look out." (*Id.* at 13.) Plaintiff

3

claims to have lost consciousness and suffered multiple injuries, including "blood clots in both eyes," bruising on his face, and severe pain in his neck and back. (*Id.* at 13-14.)

In October 2012, Plaintiff was allegedly attacked by another inmate, Kevin Dawson, as he was being transported to the jail's medical facility. (*Id.* at 14.) He claims jail officials previously ordered that he and Dawson be kept apart because Dawson had threatened him, but Officers Jimmy Chapman, John Malloy, Darnice Wiggins, R. Romero, and two unnamed officers (identified as "John Does #2 and #3) failed to heed this order. (*Id.* at 14.) All of these Defendants allegedly stood by and watched while Dawson stabbed Plaintiff in the forearm with a knife. (*Id.* at 16.) Upon seeing Plaintiff's injuries, Officer Malloy allegedly commented, "Hopefully Dawson cut the vein." (*Id.*) Plaintiff alleges that the officers then refused to take him for medical treatment for 45 minutes, even though the incident occurred right outside the jail's medical facility. (*Id.* at 17.)

In December 2012, Plaintiff was transported to an outside clinic for medical treatment. (*Id.* at 17.) When his treatment was over, officers arrived to transport him back to the jail, but they would not allow him to ride in the jail's wheelchair-accessible van, even though the van was at the facility picking up other inmates. (*Id.* at 19.) The officers allegedly insisted instead that Plaintiff exit his wheelchair and ride in a squad car, which Plaintiff felt was unsafe. (*Id.* at 17-18.) Officers Johnson and Rooney (first name unknown), and an unnamed officer ("John Doe #4"), were all present during this incident, and denied Plaintiff's repeated requests to be transported in the van. (*Id.* at 17-18.) Officer Doe #4 then tried to force Plaintiff into the squad car, causing Plaintiff to strike his head on the door of the vehicle. (*Id.* at 19.) He fell to the ground and called for help, at which point the officers allegedly began beating him. (*Id.*) He claims he was wearing handcuffs and leg shackles at the time. (*Id.*) He asserts that Officer

Johnson stood by laughing while the beating occurred. (*Id.* at 20.) As a result of the beating, he claims to have suffered a bloody nose and cuts, among other injuries. (*Id.* at 19-20.)

Plaintiff claims that after he returned to the jail, Lieutenant Martinez (first name unknown), communicated with the officers involved in the beating, and tried to cover up what had occurred by telling jail staff that Plaintiff "had a little fall." (*Id.* at 21.) In addition to Martinez, Plaintiff saw Officers Conley, Johnson, Ervin, and Eppes-Davis (first names unknown), and requested medical care from each of them. (*Id.*) He alleges that they ignored him, and in the case of Officers Eppes-Davis and Ervin, "laugh[ed] and walked away." (*Id.* at 21.) Plaintiff later came in contact with a jail nurse, Ayeshah Toney, and explained that he had been beaten and was in need of medical treatment, but she allegedly declined to provide him with any treatment. (*Id.* at 22.) He claims Nurse Toney did not like him because he previously complained about her sleeping on the job. (*Id.*)

Plaintiff's difficulties continued, and in July 2013, he had another run-in with inmate Dawson. (*Id.*) Plaintiff asserts that he was receiving a breathing treatment which required that the food slot on his cell door be propped open. (*Id.*) Officers Begley and Koch (first names unknown) were on duty at the time, and he claims they were aware that he was supposed to be separated from Dawson. (*Id.*) Despite this, the officers allegedly allowed Dawson to get close enough to spit on Plaintiff through the opening in the door. (*Id.*) Plaintiff later complained about the spitting incident to Sergeant Kolnicki (first name unknown), but he merely "thought the situation was funny." (*Id.* at 23.)

The final incident occurred in October 2013, when Plaintiff claims Officer Begley purposely ordered him to enter the cell of a dangerous inmate, David Miller, who was being detained on murder charges. (*Id.* at 25.) Plaintiff claims that he told Officer Begley he did not

5

feel safe around this inmate, but she allegedly ignored his concerns, instead locking him inside the cell "with a smirk" on her face. (*Id.* at 26.) Miller then attacked Plaintiff, cutting and scratching him on the face, pulling him out of his wheelchair, and injuring his arm, back, and hip. (*Id.*) He alleges that Officer Begley and Officer Bailey (first name unknown) purposely delayed in removing him from the cell to prolong the attack. (*Id.* at 27.) He further claims that these officers, as well as Commander Hudik, Sergeant Cruz, Sergeant McGee, and Officer Ortell (first names unknown), were aware of his injuries from this incident but purposely delayed in sending him for medical treatment for over two hours. (*Id.* at 28.)

In addition to these incidents of excessive force and assaults by other inmates, Plaintiff alleges that he was subjected to substandard conditions of confinement. (*Id.* at 23-24.) Specifically, he alleges that during March 2012, he was forced to live in a cell that was not handicapped accessible, which caused him to injure himself several times when he was attempting to transfer out of his wheelchair. (*Id.* at 24.) He further alleges that the cell had dried blood, feces, and food smeared on the walls, was excessively cold, had no hot water, and had leaking pipes, among other problems. (*Id.*)

Finally, Plaintiff alleges that his due process rights were violated in connection with disciplinary proceedings conducted at the jail. (*Id.* at 29.) Among other issues, he claims that the hearing board members routinely violate a Cook County Sheriff's Office "General Order" governing disciplinary proceedings. (*Id.* at 30-31.)

## ANALYSIS

Because it appears Plaintiff was a pretrial detainee during the bulk of these events, the Fourteenth Amendment rather than the Eighth Amendment would apply to a claim regarding his custody. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The governing standards are

6

functionally equivalent, however, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id.* at 475.

### 1. Failure to Protect

Plaintiff first alleges that jail staff failed to protect him from attacks by other inmates. Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates "from violence at the hand of other inmates." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Nevertheless, as the U.S. Court of Appeals for the Seventh Circuit has observed, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id.* Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). To state a claim, the plaintiff must "allege facts sufficient to show that the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

Here, taking Plaintiff's allegations as true, he alleges that Defendants Bowen, Smith, John Does #1-3, Begley, Koch, Kolnicki, and Bailey were personally aware that he was at risk of being hurt by other inmates, but purposely ignored his pleas for assistance, and in some instances actually exacerbated the problem by calling him a snitch or intentionally putting him with dangerous inmates. As a result he was beaten by other inmates. (R. 60, Compl. at 10-12, 14-16, 22-23, 25-27.) Giving Plaintiff the inferences to which he is entitled at this stage, he has alleged a plausible claim against these defendants.

## 2. Excessive Force

Plaintiff also alleges incidents of excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (internal quotation marks omitted)). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Further, an officer who had "a realistic opportunity to step forward and prevent a fellow officer from violating the plaintiff's rights through excessive force but failed to do so" may also be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). Here, the complaint can be read to allege that Plaintiff was not resisting during either of the incidents he describes, and that jail staff used more force than was necessary in a conscious effort to cause him pain and injury. (R. 60, Comply. at 13-14, 17-20.) Plaintiff claims to have several physical impairments, and in one of the incidents, he alleges that he was wearing handcuffs and leg shackles, and was beaten while lying on the ground. (*Id.* at 19.) Giving him the inferences to which he is entitled at this stage, he has alleged enough to proceed against Defendants Baker, Tiscareno, Olavarria, Perez, Chapman, Malloy, Wiggins, Romero, and John Doe #4 for excessive force.

## 3. Conditions of Confinement

Plaintiff also complains about the conditions under which he was housed. (*See* R. 60, Compl. at 23-25.) In evaluating a conditions-of-confinement claim, the Court conducts both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong inquires whether the alleged deprivation is "sufficiently serious" so that a prison official's

8

act or omission results in "the denial of the minimal civilized measure of life's necessities." *Id.* "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but inmates are entitled to adequate food, clothing, heat, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Conditions of confinement may establish a constitutional violation in combination when each condition alone would not satisfy the standard. *Gillis*, 468 F.3d at 493. On the subjective prong, the prisoner must show that the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. This is a high standard:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

As outlined above, Plaintiff alleges that he was housed in a cell with human feces, dried blood, and food smeared on the wall, had no hot water, and was subjected to excessively cold temperatures. (R. 60, Compl. at 24-26.) The complaint can be plausibly read to allege that Plaintiff was housed under these conditions for a period of at least a month. (*See id.* at 24.) Accepting these allegations as true, Plaintiff satisfies the objective prong of the inquiry. *See Vinning-El v. Long*, 482 F.3d 923, 923-25 (7th Cir. 2007) (reversing summary judgment for defendant where prisoner was deprived of basic sanitation items and incarcerated for six days in a cell in which blood and feces were smeared on the walls, water covered the floor, and the sink and toilet did not work); *Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir. 1989) (prisoner stated an Eighth Amendment claim where he was incarcerated for three days in a cell that was smeared with human feces and had no running water). On the subjective prong, the complaint can be

plausibly read to allege that Commander Hudik, Officer Koch, and Officer Begley were personally aware of these conditions but did nothing to remedy them despite Plaintiff's complaints. *See Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference"). Giving Plaintiff the inferences to which he is entitled at this stage, he has stated enough to proceed on a conditions-of-confinement claim against these Defendants.

### 4. Medical Care

Plaintiff's complaint can also be read to allege the denial of medical care. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must show he had an objectively serious medical need, and the defendant acted with deliberate indifference to that need. *Farmer*, 511 U.S. at 834; *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would recognize the need for a doctor's attention. *Greeno*, 414 F.3d at 653. A delay in providing medical treatment can constitute deliberate indifference where it causes unnecessary pain or suffering. *Grieveson*, 538 F.3d at 779. For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Here, Plaintiff alleges that he suffered significant injuries from the incidents outlined above, but Lieutenant Martinez, Officer Chapman, Officer Malloy, Officer Wiggins, Officer Romero, Officers John Does #2-4, Officer Conley, Officer Johnson, Officer Ervin, Officer

Eppes-Davis, and Nurse Toney purposely delayed or refused to provide him with medical treatment; the Complaint can be read to allege that this was done not for any legitimate reason but solely to cause him further pain and suffering. (R. 60, Compl. at 14-17, 20-22.) Accordingly, Plaintiff will be permitted to proceed against these Defendants on a denial of medical care claim.

Plaintiff also lists two jail doctors, Dr. Yu and Dr. Ting (first names unknown), as Defendants, presumably in connection with this claim. (*Id.* at 7.) Dr. Ting does not appear to be mentioned in the narrative section of the complaint, and thus it is not clear how, if at all, the doctor was personally involved in these events. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions."). Dr. Yu is mentioned only in passing; it appears the doctor treated Plaintiff following one of the attacks by another inmate. (R. 60, Compl. at 28.) Plaintiff clearly disagrees with the doctor's assessment, but a mere disagreement over the proper course of treatment does not give rise to a constitutional claim. *Greeno*, 414 F.3d at 653. Nor does incompetence, negligence, or even medical malpractice, because "the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Plaintiff has not alleged circumstances from which the Court could plausibly infer that Dr. Yu made "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson*, 541 F.3d at 697. Accordingly, Plaintiff will not be permitted to proceed against the doctors.

### 5. First Amendment Retaliation

The complaint can also be read to trigger First Amendment concerns. Specifically, Plaintiff alleges that a number of these incidents were attributable to the animosity staff developed toward him based on his prior lawsuit and grievances. (R. 60, Compl. at 9-10.) To establish a claim of retaliation in violation of the First Amendment, the plaintiff must allege: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the defendant's action was motivated by the protected activity. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). A prisoner has a First Amendment right to use the prison grievance process and a right of access to the courts, and cannot be punished for exercising these rights. *See id.*; *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996).

Here, Plaintiff alleges that due to his grievances and a prior lawsuit he filed, several members of the jail staff sought to retaliate against him by housing him under substandard conditions, subjecting him to excessive force, and deliberately placing him in situations where he was likely to be attacked by other inmates. (R. 60, Compl. at 9-35.) It is reasonable to presume that these types of severe deprivations might discourage a prisoner from engaging in First Amendment activity. Giving Plaintiff the inferences to which he is entitled at this stage, he has alleged enough to proceed further against Commander Hudik, Officer Koch, Officer Begley, Lieutenant Bowen, Officer Smith, Officer Bailey, Officer Baker, Officer Tiscareno, Officer Perez, Officer Chapman, Officer Malloy, Officer Wiggins, Officer Romero, and Officers John Does #1-4 for a violation of his First Amendment rights.

### 6. Due Process Violations

Plaintiff also complains that his due process rights were violated in connection with disciplinary hearings conducted at the jail. (R. 60, Compl. at 29-31.) Most of Plaintiff's allegations are of a general nature, as he purports to bring this claim on behalf of a "class" of other inmates. (R. 60, Compl. at 29.) However, as a *pro se* litigant, Plaintiff is not permitted to represent anyone other than himself in this proceeding. *See In re IFC Credit Corp.*, 663 F.3d 315, 318-19 (7th Cir. 2011) ("individuals are permitted to litigate pro se, though not to represent other litigants"). Further, to the extent Plaintiff is seeking to challenge the result of a particular proceeding in which he was found guilty of a disciplinary infraction, he is barred from doing so under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Matz v. Klotka*, --- F.3d ---, 2014 WL 4960311, at *11 (7th Cir. 2014) ("Under *Heck*, a plaintiff may not recover damages under § 1983 when a judgment in his favor would necessarily imply the invalidity of a criminal conviction or sentence that has not been reversed, expunged, invalidated, or otherwise called into question."); *see also Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (extended the holding of *Heck* to prison disciplinary proceedings).

To the extent his allegations survive these barriers, they fail for other reasons. His chief complaint appears to be that hearing officers routinely fail to follow a "general order" issued by the Sheriff regarding how the hearings are to be conducted. (R. 60, Compl. at 31.) However, a Section 1983 claim does not lie for violations of state or local law. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations and police practices"). He mentions other concerns, including that he was denied an appeal form; that the hearing officers are not as racially diverse as the inmate population; and that the hearings are sometimes

13

conducted where other inmates can overhear. (R. 60, Compl. at 29-31.) The due process protections to which an inmate is entitled in connection with a disciplinary hearing are outlined by the U.S. Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (describing inmate's right to advance written notice of the charge, a hearing before an impartial decision-maker, an opportunity to call witnesses and present evidence consistent with institutional safety, and a written statement of the reasons for the decision). The issues raised by Plaintiff do not implicate any *Wolff* rights, and the Court is not permitted to require due process protections other than those specified in *Wolff*. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767-68 (7th Cir. 2001) (observing that courts may not "add to the procedures required by *Wolff*," which "represents a balance of interests that should not be further adjusted in favor of prisoners"). For these reasons, Plaintiff will not be permitted to proceed on a due process claim.

### 7. High-Ranking Officials

Plaintiff also seeks to hold a number of high-ranking jail officials liable in connection with these events, including Cook County Sheriff Tom Dart; Jail Director Miller (first name unknown); Jail Superintendents Reyes, Brown, and Bratlien (first names unknown); and Jail Assistant Executive Director Daniel Moreci. (*See* R. 60, Compl. at 4-8.) It appears he is seeking to hold these officials liable because they oversee operations at the jail, but there is no general *respondeat superior* liability under Section 1983. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). These officials can only be held liable for their own misconduct, not for an act or omission of another jail employee. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."); *Alejo*, 328 F.3d at 936 ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.").

14

There is no plausible basis in the complaint to infer that these officials participated in or were otherwise personally involved in these events, and accordingly, Plaintiff will not be permitted to proceed against these officials.

### 8. *Monell* Claim

Giving the complaint liberal construction, it appears Plaintiff is also trying to assert a claim against Cook County ("the County") under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (R. 60, Compl. at 4, 33-35.) To state a claim against a municipal entity under *Monell*, the plaintiff must allege that he or she suffered an injury caused by the municipality's policies or customs. *Monell*, 436 U.S. at 694. A plaintiff can establish a policy or custom in three ways: (1) by establishing the existence of an express policy; (2) by establishing the existence of a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) by showing that the constitutional injury was caused by a person with final policymaking authority. *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007).

Here, Plaintiff alleges that the County has a widespread practice of failing to properly screen, train, and discipline its employees so as to prevent incidents of retribution for an inmate's use of the grievance process or other First Amendment activity. (R. 60, Compl. at 34.) As outlined above, Plaintiff details several incidents occurring on different dates and involving many different jail staff in which he claims to have been mistreated because of his First Amendment activity. *See Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance"). Giving him the inferences to which he is entitled at this stage, the Court concludes that he has alleged enough to proceed further on a claim against the County under *Monell*.

### 9. Request For Injunctive Relief

At the end of his complaint, Plaintiff makes reference to seeking preliminary and permanent injunctive relief against Defendants, in addition to seeking damages. (R. 60, Compl. at 36.) It is unclear exactly what type of injunctive relief he is seeking, but Plaintiff is no longer housed at the jail. (*See* R. 54, Notice of Change of Address.) "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason*, 83 F.3d at 811. Here, Plaintiff does not claim, nor is there any plausible basis in the complaint to infer, that he is likely to be transferred back to the jail anytime in the near future. (*See* R. 60, Compl.) Accordingly, he has no claim for injunctive relief against Defendants, all of whom are located at the jail.

### APPOINTMENT OF COUNSEL

Plaintiff also filed three separate motions asking for new counsel to be appointed. (R. 58, Pl.'s Mot. for Counsel; R. 59, Pl.'s Mot. for Counsel; R 63, Pl.'s Mot. for Counsel.) Unlike criminal defendants, indigent civil litigants have no constitutional or statutory right to court-appointed counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992). Nevertheless, the Court may in its discretion "ask lawyers to represent indigent litigants on a volunteer basis" when the circumstances warrant it. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014); *see also Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc) (describing court's authority to recruit *pro bono* counsel under 28 U.S.C. § 1915(e)(1).) In an exercise of the Court's discretion, the Court will make one final attempt to find a lawyer willing to represent Plaintiff on a volunteer basis. If Plaintiff fails to fully cooperate with new counsel, or otherwise hinders counsel's ability to litigate the case resulting in counsel's withdrawal, the Court will not recruit any additional attorneys to represent Plaintiff in this matter. The Court admonishes

Plaintiff that if that occurs, he will be required to litigate this case on his own from that stage forward.

## CONCLUSION

For the foregoing reasons, Plaintiff is permitted to proceed on the claims outlined herein pursuant to 28 U.S.C. § 1915A. Summons shall not issue at this time. Plaintiff's motions for recruitment of *pro bono* counsel (R. 58, 59, 63) are GRANTED. James T. Newman of Cooney & Conway, 120 North LaSalle Street, 30th Floor, Chicago, IL 60602, (312) 236-6166, is recruited to represent Plaintiff pursuant to counsel's trial bar obligation under Local Rule 83.11(g). Counsel is instructed to contact his client and investigate his claims pursuant to counsel's Rule 11 obligation. Counsel shall submit an amended complaint (if he so chooses), the documents needed for service of process, or other appropriate filing within 60 days of the entry of this order.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: October 14, 2014**