**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DONALD CONWELL (#2012-0907-038)       )
                                      )
    Plaintiff,                         )
                                      )      No.: 2012-cv-10062
                                      )
v.                                    )
                                      )
COUNTY OF COOK, THOMAS DART, J.K. JOHNSEN )
N. BOWENS (BADGE #219), DARNICE WIGGINS )
(#1189), R. SMITH(#9518), JENNIFER JEFFERSON )
(#9068), WILLIAM BAKER (#8310), JOSE  )
TISCARENO (#9521), M. OLAVARRIA (#9473), )
RAMONITA PEREZ (#8466),  R. ROMERO (#8802), )
JIMMY CHAPMAN, JOHN MALLOY, HUDIK,    )
EPPES-DAVIS, CONLEY, SERGERNT JOHNSON, )
ROONEY, MARTINEZ, ERVIN, TONEY, BEGLEY, )
KOLNICKI, KOCH, CRUZ, MCGEE, BAILEY,  )
ORTELL, COOK COUNTY JAIL, and JOHN DOES )
CORRECTIONAL OFFICERS, and SUPERVISORS, )
                                      )
    Defendants.                        )

## PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff, Donald Conwell ("Mr. Conwell"), complains against the above-named

Defendants as follows:

### INTRODUCTION

1.     Mr. Conwell, a disabled pre-trial detainee at the Cermak Hospital within the Cook

County Jail, seeks damages for injuries he suffered as a result of the misconduct of several Cook

County Jail Correctional officers and supervisors.

2.     This law-suit seeks injunctive relief and damages against Cook County and Tom

Darl under 42 U.S.C. 1983 and the constitution of the United States based on their deliberately

indifferent failure to properly inform and train correctional officers regarding use of excessive

force or detainee protection and failure to properly sanction such officers when they do use excessive force or fail to protect detainee from a known risk of attacks.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the causes of action in this complaint under 28 U.S.C. 1331 and 1343 (A)(3). This actions arises under the Civil Rights Act (42 U.S.C. 1983) and the Constitution of The United States.

4. This Court has supplemental Jurisdiction over the cause of action in the Complaint under 28 U.S.C. 1367, as they arise from the same set of operative facts as those that form the basis for Mr. Conwell's claims under 28 U.S.C. 1983.

5. Defendant work and, on information and belief, resides in this district. The Events or omissions giving rise to this claim occurred in this district. Thus, venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391 (b)(1) and (2).

## PARTIES

6. Plaintiff, Mr. Conwell, is, and was at all relevant to this complaint, a citizen of the United States and a resident of the City of Chicago, located in Cook County, Illinois. At all relevant times in this complaint, Mr. Conwell has be a pretrial detainee at Cermak Hospital at the Cook County Jail.

7. During the events described in this lawsuit, Mr. Conwell held two different detainee identification numbers. From 2011 until April 18, 2012, Mr. Conwell was identified by detainee number 2011-1209-170. Mr. Conwell then spent 2 months in Dixon Correction Center as a result of charges stemming from the March 12, 2012 attack which is described below following his stay at Dixon Correction Center, Plaintiff Mr. Conwell return to the Cook County Jail with a new detainee identification number, 2012-0607-038. He remains in Custody.

8.    The County of Cook, which maintained, managed or operated the Cook County Jail, is a municipality duly incorporated under the Laws of the State of Illinois.

9.  Name: Tom Dart

   Title: Sheriff of Cook County

   Place of Employment: Cook County Jail

10. Name: Miller

   Title: Director of Cook County Jail

   Place of Employment: Cook County Jail

11. Name: Reyes

   Title: Superintendent

   Place of Employment: Cook County Jail

12. Name: Brown

   Title: Superintendent

   Place of Employment: Cook County Jail

13. Name: J.K. Johnsen

   Title: Commander

   Place of Employment: Cook County Jail

14. Name: Hudik

   Title: Commander

   Place of Employment: Cook County Jail

15. Name: N. Bowens (#219)

   Title: Lieutenant

   Place of Employment: Cook County Jail

16. Name: Martinez

    Title: External Operations Lieutenant

    Place of Employment: Cook County Jail

17. Name: Darnice Wiggins (#1189)

    Title: Sergeant

    Place of Employment: Cook County Jail

18. Name: Johnson

    Title: External Operation Sergeant

    Place of Employment: Cook County Jail

19. Name: Kolnicki

    Title: Sergeant

    Place of Employment: Cook County Jail

20. Name: Cruz

    Title: Sergeant

    Place of Employment: Cook County Jail

21. Name: Mcgee

    Title: Sergeant

    Place of Employment: Cook County Jail

22. Name: R. Smith (#9518)

    Title: Officer

    Place of Employment: Cook County Jail

23. Name: William Baker (#8310)

    Title: Officer

Place of Employment: Cook County Jail

24. Name: Jennifer Jefferson (#9068)

    Title: Officer

    Place of Employment: Cook County Jail

25. Name: Jose Tiscareno (#9521)

    Title: Officer

    Place of Employment: Cook County Jail

26. Name: M. Olavarria (#9473)

    Title: Officer

    Place of Employment: Cook County Jail

27. Name: Ramonita Perez (#8466)

    Title: Officer

    Place of Employment: Cook County Jail

28. Name: R. Romero (#8802)

    Title: Officer

    Place of Employment: Cook County Jail

29. Name: Jimmy Chapman

    Title: Officer

    Place of Employment: Cook County Jail

30. Name: John Malloy

    Title: Officer

    Place of Employment: Cook County Jail

31. Name: Eppes Davis

Title: Officer

Place of Employment: Cook County Jail

32. Name: Rooney

   Title: External Operation Officer

   Place of Employment: Cook County Jail

33. Name: Ervin

   Title: Officer

   Place of Employment: Cook County Jail

34. Name: Begley

   Title: Officer

   Place of Employment: Cook County Jail

35. Name: Koch

   Title: Officer

   Place of Employment: Cook County Jail

36. Name: Bailey

   Title: Officer

   Place of Employment: Cook County Jail

37. Name: Ortell

   Title: Officer

   Place of Employment: Cook County Jail

38. Name: Terence Coughlan

   Title: Hearing Board Member

   Place of Employment: Cook County Jail

Each Defendant is sued individually and in his (or Her) official capacity. At all times mentioned in the complaint each Defendant acted under The Color of State Law.

## BACKGROUND

39.     Plaintiff Mr. Conwell is disabled as the result of a "2007" attack in the Cook County Jail, by Cook County Sheriff. Plaintiff Mr. Conwell has limited mobility, uses a wheelchair as a resource, and has a very limited use of his hand. For example, he is unable to clench his fingers into a gist. Mr. Conwell also suffers from poor vision in his right eye as a result of the "2007" attack by Cook County Sheriff.

40.     Following the "2007" attack by Cook County Sheriff, Mr. Conwell has constantly feared for his safety while confined to the Cook County Jail. After being admitted to the jail in "2011", Mr. Conwell requested placement in Protective custody. Mr. Conwell regularly informed prison staff of his dear retaliation by officers or attacks by other prisoners, including by writing written grievances. After Plaintiff Mr. Conwell's 2007 injuries in the Cook County Jail by cook County Sheriff, he filed a federal lawsuit against a number of jail officers who were involved in the incident. That lawsuit was ultimately dismissed for lack of prosecution.

41.     Mr. Conwell has also filed numerous paternal grievances against various officers at the Cook County Jail.

42.     As a result of Plaintiff Conwell's "2007" lawsuit, and other grievances, many officers at the Cook County Jail feel and expressed animus and animosity toward Plaintiff. Mr. Conwell for example, as alleged below, once defendant expressed satisfaction upon observing Mr. Conwell's injuries.

43.     On information and belief based on the fact that Plaintiff. Mr. Conwell has been attacked by Cook County Jail sheriff guards and fellow detainees many times, there exists

7

between many officer of the Cook County Jail-including between all defendants-an agreement to violate Plaintiff Mr. Conwell Civil Rights, to ignore his legitimate needs, and to ignore risks to his health and safety.

44.     As alleged below, parties to that agreement have participated in overt acts in furtherance of that agreement.

45.     As a result of this agreement, Plaintiff Mr. Conwell has been injured. For example he has sustain five physical attacks, described below, and suffers from significant anxiety and emotional distress.

"The February 6, 2012 attach by Richard Brooks."

46.     On or about February 5, 2012 Mr. Conwell returned from Stroger Hospital for Asthma complications, and was taken to his living unit on 3-South. Mr. Conwell complaint about the unsanitary condition of his cell and asked to move to a new call within the 3-South unit of Cermak Hospital, which was at the time used for detainees with medical problems in protective custody. Defendant Bowens removed Plaintiff Mr., Conwell in another protective custody cell, defendant Bowens placed Plaintiff Mr. Conwell in the 3-West unit in the general population.

47.     Plaintiff Mr. Conwell repeatedly begged over and over for defendant Bowens not to put him into the general population because he feared for his safety and was in protective custody.

48.     When defendant Bowens placed Mr. Conwell in the general population, he stated, in the presence of other inmates/detainees, that Plaintiff Mr. Conwell was a "snitch" knowing his statement would be heard by other prisoners/detainees.

49.     The next day, Plaintiff Mr. Conwell told defendants Smith and John Doe #1 that "He Plaintiff Mr. Conwell was in fear for his safety and that he belonged in protective custody." Defendants Smith and John Doe #1 told Plaintiff there was nothing they could do.

50.     Shortly thereafter, Plaintiff Mr. Conwell was attacked by another detainee, Richard Brooks (#2011-1109-241).

51.     Mr. Brooks struck Plaintiff Mr. Conwell with a closed first four times and, after Mr. Conwell fell from his wheelchair to the ground. Mr. Brooks stomped on Plaintiff Mr. Conwell multiple times.

52.     Other detainees, recognized the severity of the attack, told Mr. Brooks "not to kill Plaintiff Mr. Conwell."

53.     As a result of the attack, Plaintiff Mr. Conwell suffered a fractured bone in his left eye socket and required medical treatment at Stroger Hospital Trauma Unit. Plaintiff Mr. Conwell continues to experience pain, twitch, and double vision in his left eye, and continuous pain in his neck and back.

"The March 12, 2012 attack by prison guards."

54.     On or about March 12, 2012 Defendant Jefferson informed Mr. Conwell that he would be moved from cell 3115 to cell 3137 in the Cermak Hospital Isolation unit, that house not only "protective custody" detainees, but also detainees with contagious diseases such as T.B., Chickenpox, colds and etc.

55.     Cell 3137 was unsanitary on March 12, 2012. It has a malfunctioning toilet, and water was coming out of the ceiling by the sprinkles and walls of the cell, and pooling on the

floor extremely cold, not hot water, and the cell is not at all handicap assessable, and placed, Plaintiff Mr. Conwell in a unsafe cell in violation of the A.D.A.

56.     Plaintiff Mr. Conwell requested that he not be moved because cell 3137 was unsanitary, or safe. Mr. Conwell asked defendant Jefferson to call a supervisor or alternatively to obtain a video camera and document the condition of the cell and Plaintiff Mr. Conwell's exchanges with the officers regarding the conditions of the cell, and to ensure the officers would not attack Plaintiff Mr. Conwell as Cook County Sheriff Jail Guards are known to do.

57.     Defendants Baker and Tiscareno, who had been observing the exchange, entered Mr. Conwell's cell.

58.     Defendants Baker and Olvarria forcefully removed Mr. Conwell from his wheelchair and allowed Mr. Conwell to fall to the floor.

59.     Defendant Tiscareno jumped on Plaintiff Mr. Conwell's back and chocked Mr. Conwell while Mr. Conwell was face down on the floor.

60.     Defendant Baker punched Plaintiff Mr. Conwell in the head while Mr. Conwell was on the floor, along with defendant Olavarria, numerous times.

61.     Defendant Jefferson kicked Plaintiff Mr. Conwell in the face while Mr. Conwell was on the floor.

62.     Defendant Perez observed the brutal beating and did nothing to stop the beating, because she played look out.

63.     Plaintiff Mr. Conwell lost consciousness during the beating and chocking.

64.     When Plaintiff Mr. Conwell regained consciousness, he was being dragged from cell 3115 to cell 3137 by defendants Tiscareno and Baker. Mr. Conwell was handcuffed. Plaintiff

Mr. Conwell had been dragged at least thirty feet between the time he lost consciousness and the time he regained consciousness.

65.    When Plaintiff Mr. Conwell regained consciousness, he was bleeding from his mouth and his throat and neck were very sore, and in pain.

66.    Plaintiff Mr. Conwell received treatment from Dr. Defuniak while on the floor in cell 3137 on March 12, 2012 Dr. Defuniak referred Mr. Conwell to Stroger Hospital.

67.    Plaintiff Mr. Conwell received treatment at Stroger Hospital.

68.    As a result of the attack, Mr. Conwell suffered an injury to his right ear, blood clots in both eyes, bruises under eyes, scars on both wrists and continues to experience sever pain in his neck and back and other injured areas. Plaintiff Mr. Conwell suffers from extreme anxiety and fear as a result of the attack.

### "The October 25, 2012 attach by Kevin Dawson"

69.    On August 30 and 31, 2012, detainee Kevin Dawson threatened to stab Plaintiff by posting letters and notes in his cell window and by making throat-cutting gestures toward Plaintiff. Plaintiff notified prison officers of Mr. Dawson's thetas.

70.    Defendant Tiscareno regularly communicated with detainee Kevin Dawson and, on information and believe, encouraged Mr. Dawson's animus toward Mr. Conwell. Indeed, on information and belief, defendant Tiscareno occasionally provided contraband to Mr. Dawson. For example, on August 31, 2012 Mr. Conwell observed Defendant Tiscareno give an object to Mr. Dawson that may have been a knife, Plaintiff first complained of this incident via inmate grievance form on September 4, 2012.

71.     As a result of Mr. Conwell's complaints, Commander J.K. Johnsen posted a memorandum ordering that "Mr. Conwell and Mr. Dawson be kept separate.

72.     On or about October 25, 2012, defendant Romero told Plaintiff Mr. Conwell, so as to be heard by detainee Kevin Dawson in the next cell, that Mr. Conwell had a court appearance that day.

73.     Plaintiff told defendant Romero that "he was to be kept separate from Mr. Dawson, pursuant to the keep-separate memorandum that was on file at the officer's desk. Mr. Conwell asked defendant Romero if Plaintiff could speak with supervisor, Sergeant Wiggins. Plaintiff told defendant Romero that he feared that Mr. Dawson had weapons and contraband on his person and indented to attack Plaintiff. Defendant Romero stated that Plaintiff would see Defendant Wiggins in the Cermak waiting area, and deliberately did not take any action to keep Plaintiff and Mr. Dawson Separate.

74.     Plaintiff was pushed in his wheelchair to the Emergency Room waiting area immediately outside the entrance to Cermak Health Services. Mr. Dawson was also waiting in a wheelchair in the same area. IN the waiting area, Mr. Conwell told Defendants Chapman and Malloy about the keep-separate order and stated he feared for his safety.

75.     Defendants Chapman and Malloy did not move either Mr. Conwell or Mr. Dawson to a different area.

76.     A few minutes later, Mr. Dawson pulled an arm from Mr. Dawson's own wheel-chair and used it to his Mr. Conwell in the chest.

77.     Defendants John Doe 2 and 3 took the wheelchair arm from Mr. Dawson but did not separate Mr. Dawson and Mr. Conwell.

78.    A few minutes later, Mr. Dawson removed the other arm from his wheelchair and raised it as if to throw it at Mr. Conwell

79.    Jail officers, including Defendants Chapman, Malloy and John Does 2 and 4 observed Mr. Dawson attempting to injure Mr. Conwell with the arms of his wheelchair but did not separate Mr. Conwell and Mr. Dawson.

80.    A few minutes later, Mr. Dawson jumped out of his wheelchair holding a metal knife in his left hand.

81.    Mr. Dawson stabbed Mr. Conwell in his upper forearm, close to Plaintiff's brachial artery, and Plaintiff Mr. Conwell began bleeding heavily. Plaintiff's blood pooled on his shoes, clothing and the floor.

82.    Defendant Malloy observed the stabbing and said "hopefully Dawson cut the vein" but did not attempt to help Mr. Conwell.

83.    Defendant Chapman observed the stabbing and did not respond to it.

84.    Although Plaintiff was immediately outside the entrance to Cermak Health Services when Plaintiff was stabbed, defendants Chapman Malloy and John Doe 2 and 3 deliberately did not seek immediate medical attention for Mr. Conwell in a constipation to allow Mr. Conwell to bleed to death. Nor did they remove Mr. Dawson from the area.

85.    Defendants Wiggins and Bowens were the supervisors on duty during the stabbing, and deliberately tried to cover up the stabbing, falsified documents, and deliberately fail to supervise the officers they were supposed to manage.

86.    Defendants did not take Mr. Conwell into the emergency room which was only feet away from the location where Mr. Conwell was stabbed, for treatment until forty five

minutes after the stabbing. Indeed, defendants took Mr. Dawson who was uninjured into the emergency room before taking Mr. Conwell into the emergency room.

87. Defendants Wiggins, Bowens and Malloy deliberately was trying to convince the emergency room doctor to document I was bleeding from a sever scratch, in a conspiracy to cover up Mr. Conwell being stabbed and attacked by Mr. Dawson. Which is "obstruction of justice.:

88. Plaintiff was deliberately denied the right to press charges by Defendant Bowens and Wiggins.

Attack by External Operation, and Transpiration Officers, 12-13-12"

89. Plaintiff Mr. Conwell was transported 12-13-12 to "Stroger Hospital" for asthma clinic via wheelchair Handi Assessable Van around 9:00 a.m. by transport officers.

90. Plaintiff was placed in the detainee holding cage until it was time for his appointment.

91. Plaintiff was placed back in the detainee holding after his asthma clinic appointment was over, to be transferred back to Cook County Jail

92. Defendant Sergeant Johnson deliberately call a squad car to transport Plaintiff Conwell back to Cook County Jail.

93. Defendant Johnson knew Plaintiff Mr. Conwell was to be transported in a wheelchair access vehicle; yet fail to call for Plaintiff Mr. Conwell proper transpiration in deliberate indifference to Plaintiff Mr. Conwell safety and well being.

94. Defendant Rooney and John Doe came to pick up Plaintiff to be transported from the detainee holding cage inside "Stroger Hospital" on or around 4:00 p.m.

95.     Plaintiff Mr. Conwell stated to defendants Sergeant Johnson, Rooney, and John Doe who was defendant Rooney Partner "I cannot transfer inside no squad car fro no wheelchair, I might hurt myself."

96.     Defendant John Doe stated "You are today!"

97.     Defendant Johnson stated "Defendant Brown said he can get in a squad car."

98.     Defendant John Doe then proceeded to push the "Stroger Hospital garage where detainees are picked up and dropped off from the Cook County Jail.

99.     Defendant Brown has deliberately misled security and medical staff to harass Plaintiff, and deny Plaintiff excess to adequate medical treatment in the past for Cook County Officials.

100.     Defendant Sergeant Johnson, Rooney and John Doe deliberately ignored Plaintiff's please for them to get the wheelchair assessable van that is used to transport detainees in wheelchairs.

101.     Defendant Johnson observe the wheelchair assessable van in the garage to pick the pre-trial detainees in wheelchairs who were finish with their medical appointments and ready to be transported back to Cook County Jail.

102.     Defendant Sergeant Johnson deliberately turned blind-eye to the Plaintiff's safety, and to the fact there was a wheelchair van present that could have transported Plaintiff Mr. Conwell.

103.     Plaintiff was pushed to the squad car by defendant John Doe and Mr. Conwell stated again to Defendants Rooney and his partner John Doe as Defendants Sergeant Johnson stood on the dock "I can't transfer in the squad, it's too dangerous."

104.    Defendant John Doe stated to his partner Rooney "Help me drag this chump inside the squad car."

105.    Defendant John Doe shoved Plaintiff out his wheelchair causing Plaintiff Mr. Conwell to hit his head on the door of the squad car.

106.    Plaintiff Mr. Conwell began to yell "help" and defendant John Doe then started to punch Mr. Conwell in the head while saying "help me with this bitch" to the other defendant external operation and transport officers.

107.    Defendant Rooney; John Doe, Robinson, and (4) John Doe officers proceed to deliberately attack Plaintiff with close fists while the Plaintiff was in handcuffs, a waist chain, and leg shackles and a taser box on his leg; as he was dragged inside a squad car by the leg shackles.

108.    Plaintiff Conwell sustained a bloody nose, mouth, and cuts on his ankle from being attacked by Defendants Rooney, his Partner John Doe, Robinson, and (4) John doe officers while being dragged in the squad car by the leg shackles.

109.    Defendants Rooney, his partner John Doe, Robinson and (4) other John Doe officers deliberately beat Plaintiff Mr. Conwell with total disregard to Plaintiff, and in reckless indifference of his safety or the likelihood of injury to Plaintiff by trying to force him to do something he could not do.

110.    Defendants Sergeant Johnson stood there watching Plaintiff Mr. Conwell get beat by his subordinate officers, and just watch and laugh. Defendant Sergeant Johnson deliberately failed to intervene.

111.    Plaintiff Mr. Conwell was deliberately denied access to medical treatment while at Stroger Hospital in the garage to prevent Mr. Conwell from documenting his injury by Defendant Sergeant Johnson.

112.    Plaintiff was transported back to Cook County Jail Cermak Health Services in the squad car, with no seat belt on.

113.    Plaintiff was met at Cermak by defendants Lt. Martinez and Lt. John Doe who monitored defendants Rooney and his partner John Doe to ensure they didn't harm the Plaintiff no more than they did.

114.    Upon inside Cermak Health Services defendant Lt. Martinez told defendant officer Johnson assign to Cermak Health Services get him (Plaintiff Mr. Conwell) a new D.O.C. uniform and make sure he doesn't see a doctor, he (Plaintiff Mr. Conwell)had a little fall," in a conspiracy to cover up Plaintiff Mr. Conwell injuries he sustained.

115.    Plaintiff Mr. Conwell was again denied excess to medical treatment again at Cermak by Defendants Officer Johnson, and Sergeant Conley who was summon to the emergency room waiting area where Plaintiff was taken, defendant Sergeant Conley and Officer Johnson both were security assigned to Cermak Health Services.

116.    Defendant Sergeant Conley and Officer Johnson deliberately forced Plaintiff to change into, yeta dirt D.O.C. uniform in a conspiracy to cover up the fact Plaintiff being beat for no reason, by defendants external operation and transport officers Rooney, Robinson, and John Doe Officers.

117.    Defendant Conley deliberately denied Plaintiff medical treatment on camera as he escorted Mr. Conwell to his living unit 3-Sout.

118. Plaintiff Conwell then asked defendants, Officer Ervin and Eppes0 Davis, "Please call me somebody: I need to get to a doctor, I was attacked by some officer?"

119. Both defendants Eppes-Davis, and Ervin who were both the assign living unit officers laugh and walked away.

120. Plaintiff was again denied excess to a doctor and medical treatment by Eppes-Davis and Ervin.

121. Plaintiff again on 11:oo p.m. to 7:00 a.m. shift explained to defendant LPN Ayeshah Toney he Plaintiff was attacked by officers, and was again deliberately denied excess to a doctor or medical treatment with indifference to Mr. Conwell's health or safety.

122. Defendant Ayeshah Toney denied Plaintiff access to medical treatment do to Mr. Conwell writing Defendant Ayesha Toney up on a numerous occasions for unprofessional conduct, and sleeping on the job.

123. Defendant Hudik deliberately failed to investigate plaintiff grievances, or get Plaintiff to medical treatment.

124. Defendant Hudik deliberately failed to send plaintiff grievances to (O.P.R.) "Operation of Professional review," as he was supposed to, be the grievance was on "Excessive Force, assault and battery."

125. Defendant Hudik was a deliberately unfair and impartial decision maker covering up for External Operations Correctional Officer.

"Assaulted by Kevin Dawson Again 7-22-13"

126. On or about 7-22-13 Plaintiff was taking his asthma neblizer treatment in his cell which required his Chuck-Hole to be open to run his nebulizer tubing through because the oxygen tank is not allowed in the cell.

127.     Defendants Begley and Koch whom are aware that Plaintiff and Mr. Dawson are to be separated; deliberately fail to follow the memo on the officer's desk, and allowed Mr. Dawson out his cell unsupervised with indifference to plaintiff safety.

128.     Mr. Dawson hung in the day room as if he was watching T.V. then ease up on Plaintiff door and spit a mouth full of spit on plaintiff Mr. Conwell.

129.     Defendant Kolnicki was notified of plaintiff being pit on and defendant Kolnicki thought the situation was funny, yet deliberately notified that detainee Kevin Dawson was to have no contact with Plaintiff, due to several threats made.

"Inadequate and Unsanitary Housing Not Handicap Assessable"

130.     Plaintiff was deliberately placed in segregation by defendant Hudik on or around March of 2013; in retaliation to plaintiff writing numerous grievances he didn't want to respond to, on any of the defendant Hudik subordinate staff.

131.     Plaintiff Mr. Conwell was deliberately placed in the same inhumane cell plaintiff Mr. Conwell was forced in March of 2012 that is not handicap accessible which has cause Plaintiff Mr. Conwell numerous times to hurt himself trying to transfer within the cell.

132.     Plaintiff Mr. Conwell cell defendant Hudik had Plaintiff Mr. Conwell deliberately placed in had no hot water; extremely dirty; walls had dry blood, snot boogers, mustard, and feces on the wall, extremely cold air coming out the vents; leaking plumbing and the emergency nurse call light was and still broke with indifference to Plaintiff Mr. Conwell health and safety.

133.    Plaintiff Mr. Conwell has filed numerous grievances on defendant Hudik about being placed in a inhumanely cell to punish Mr. Conwell for filing grievances when plaintiff constitutional rights were violated, and punishment.

134.    Plaintiff Mr. Conwell grievances were deliberately given to the defendant Hudik to respond to.

135.    Defendant Reyes deliberately turned blind-eye to the appeal board administrator recommendations to re-address the plaintiff grievances directly with Plaintiff Mr. Conwell.

136.    Plaintiff Mr. Conwell on 5-15-13 defendants Hudik and Koch both deliberately refuse to take plaintiff Conwell over to living units 3-west or 3-north after detainees lock up to take a shower as Plaintiff Mr. Conwell medical doctor order, do to Plaintiff Mr. Conwell not having any hot water in plaintiff cell.

137.    Upon information and belief defendant Koch stated defendant Hudik told him, Plaintiff Mr. Conwell could shower in cell #3 or refuse his shower.

138.    Plaintiff Mr. Conwell come to find out cell #3also had no hot water, and force to take a cold shower.

"Retaliatory conduct on Plaintiff Mr. Conwell on 5-23-13,"and "interfering with medical treatment"

139.    On 5-23-13 defendants Koch and Begley deliberately bragged boastfully about deliberately destroying Plaintiff Mr. Conwell shoes and clothes in retaliation to grievances filed against both defendants.

140.    Plaintiff Mr. Conwell had a order from his doctor to have his shoes and defendants Koch and Begley both deliberately interfered with the Plaintiff Mr. Conwell medical treatment the doctor order.

141.    Plaintiff Mr. Conwell has wrote over (35) grievances on defendants Hudik, Koch, and Begley for deliberately violating Plaintiff Mr. Conwell constitutional rights, violating general orders, and CCDOC supervisors; directors; I.A.D., and O.P.R. have all failed to intervene.

"Failure to protect on 10-10-13", and "denial to communicate with the outside world."

142.    On 10-10-13 defendant Begley deliberately made the Plaintiff Mr. Conwell a medium security detainee use the phone in David Miller ID# 2009-006-0657 a super maximum detainee cell, after Plaintiff Mr. Conwell states "Plaintiff Mr. Conwell didn't feel safe around David Miller to defendants Begley and Bailey

143.    Defendant Begley gave Plaintiff Mr. Conwell her word "Plaintiff Mr. Conwell would be OK." And locked Mr. Conwell inside David Miller cell with a smirk on her, defendant Begley face.

144.    David Miller (#2009-006-0657) was very upset about this situation, and 5 to 10 minutes after defendant Begley walked away, Plaintiff Mr. Conwell was grab severely hard by the face causing Plaintiff Mr. Conwell to sustain shallow cuts and scratches in Plaintiff Mr. Conwell face.

145.    Plaintiff Mr. Conwell knock David Miller left hand out and away from Mr. Conwell face, and Plaintiff Mr. Conwell started screaming "for help" causing Plaintiff Mr. Conwell witness to look into David Miller call and monitor the situation, and call for the officer.

146.    David Miller attempted to head-butt Plaintiff Mr. Conwell in the face and cause Plaintiff Mr. Conwell to cover his face in a crouching position causing David Miller to head-butt Mr. Conwell elbow and upper forearm, which cause David Miller left eye to start bleeding, and Mr. Conwell elbow to start bleeding.

147.    David Miller snatch Plaintiff Mr. Conwell out his wheelchair and started stomping Mr. Conwell in his back, neck, leg and ankle.

148.    Plaintiff Mr. Conwell was finally let out the cell by defendant Bailey but was tackled out his wheelchair and into the dayroom as Plaintiff Mr. Conwell was wheeling his wheelchair backwards into the dayroom, out of Mr. Miller room.

149.    Defendants Begley and Bailey deliberately placed Plaintiff Mr. Conwell in a dangerous environment and this after Mr. Conwell verbally and writtenly explain "he didn't feel safe around Mr. Miller" who upon information and belief is locked up for killing an African American with gang members.

150.    Defendants Begley and Bailey deliberately fail to follow memo dated 10-16-12 written by J.K. Johnsen; and its posted on the officers desk, and also deliberately fail to protect who was in protective custody Plaintiff Mr. Conwell.

151.    Defendants Hudik and Begley deliberately labeled Plaintiff Mr. Conwell as the instigator and aggressor in retaliation to the numerous grievances filed against defendants Hudik and Begley for violating Plaintiff Mr. Conwell civil and constitutional rights and jail general orders in the last 6-month.

152.    Defendants Hudik, Cruz, McGee, Ortell, and Begley all deliberately conspired with David Miller as to what to say on camera in a conspiracy to weaken Plaintiff Mr. Conwell pending civil cases against cook county officials.

153.    Defendant Cruz ordered defendant Ortell to search Mr. Conwell cell and destroy anything extra and this is after Plaintiff Mr. Conwell brought to defendant Cruz about the fact defendant Ortell stealing and throwing away lots of Mr. Conwell property in the past.

154.    Defendant Cruz then ordered officer Jane Doe to take Plaintiff Mr. Conwell for medical treatment upon information and belief so Plaintiff Mr. Conwell could not witness the destruction of Plaintiff Mr. Conwell property, and defendants Hudik, McGee, Begley and Ortell all deliberately could coach David Miller.

155.    Plaintiff Mr. Conwell was took to the basement where plaintiff was delayed medical treatment for over 2 hours by defendant Cruz who came and watch Plaintiff Mr. Conwell.

156.    Plaintiff Mr. Conwell was finally seen by Yu whom plaintiff has had problems with in the past and filed detainee grievances on.

157.    Yu deliberately ignored Plaintiff Mr. Conwell complaints of a busted elbow, scratches to his face, bruises on plaintiff leg, and pain in plaintiff lower back and right hip when plaintiff lean forward and backwards.

158.    Plaintiff Mr. Conwell was denied x-ray or CT-scans to any of the plaintiff injured area by Yu.

159.    Plaintiff Mr. Conwell was return back to his cell to find his cell disarray and a lot of property missing "due to violation on hearing board and disciplinary procedures."

160.    Plaintiff Mr. Conwell brings this class action lawsuit on behalf of the numerous pre-trial detainees who "Due process clause of the fourteenth and fifth amendment's" has been violated.

161.    On numerous occasions defendant Terrence E. Coughlan has deliberately violated Plaintiff Mr. Conwell and numerous other pre-trail detainees rights to a fair hearing.

162.    Defendants Cook County, Thomas Dart, Miller, Reyes, Hudik, and Terence E. Coughlan have all deliberately fail to protect Plaintiff Mr. Conwell and other class members by failing to ensure the disciplinary system complies with all applicable due process requirements.

163.    Defendants Cook County, Thomas Dart, Miller, Reyes, and Hudik have deliberately fail to place a hearing team member of ethnic background when upon information and believe 90% of all disciplinary reports written are on blacks and latinos pre-trial detainees who are constantly targeted and preyed on by C.C.D.O.C.

164.    Defendant Terence E. Coughlan deliberately fail to ensure that a four-part disciplinary report was prepared by the sworn C.C.S.O. employees.

165.    Defendant Terence E. Coughlan deliberately fail to ensure that disciplinary reports contain one charge and when the rule is violated disciplinary reports are deemed invalid.

166.    Defendants Cook County, Thomas Dart, Miller, Reyes, and Hudik deliberately fail to ensure subordinate Cook County Sheriff officers presented Plaintiff Conwell and other class members with the completed disciplinary report for signature and acknowledgement of charges which violate Plaintiff Mr. Conwell and class members due process rights to be notified of the charge, and to plaintiff Conwell and class members right to prepare a defense.

167.    Defendants Cook County, Thomas Dart, Miller, Reyes, and Hudik deliberately kept plaintiff Mr. Conwell and other class members unconstitutionally in pre-hearing detention over 72 hours without a hearing.

168.    Defendants Cook County, Thomas Dart, Miller, Reyes, and Hudik all deliberately fail to take disciplinary action on any Cook County Sheriff officers who has held Plaintiff Conwell and class members unconstitutionally in pre-hearing detention.

169.    Defendant Terence E. Coughlan deliberately by himself conducted Plaintiff Mr. Conwell disciplinary hearing on division 8-Cerman 3-south living unit at the officers desk in front of 4 cells of detainees who could not help but stand in the door and listen.

170.    Defendant Terence E. Coughlan deliberately violated Plaintiff Mr. Conwell due process by deliberately refusing Plaintiff Mr. Conwell a appeal from which denied Plaintiff Mr. Conwell a fair and impartial decision maker at the hearing board in violation of plaintiff due process clause.

171.    Defendant Terance E. Coughlan deliberately conducted the disciplinary hearing by himself which denied plaintiff a fair hearing on numerous occasions.

172.    Plaintiff Mr. Conwell brought the "Sheriff Office General Order 11.14.8.0" to any and all disciplinary hearings to point out the ruled defendant Terence E. Coughlan was continually violating and Defendant Terence R. Coughlan deliberately turned blind-eye to Mr. Conwell evidence and witnesses Plaintiff Mr. Conwell ask to be called in violation of Plaintiff Mr. Conwell fifth and fourteenth amendment.

173.    The course of conduct described above was carried out by Dart, Johnsen, Bowens, Wiggins, Smith, Jefferson, baker, Tiscareno, Olavarria, Perez, Romero, Chapman, Malloy, Reyes, Brown, Hudik, Puisis, Eppes-Davis, Conley, Johnson, Miller, Behgley, Kolnicki, Koch, Cruz, McGee, Bailey, Ortell, Ting, Yu, Terence E, Coughlan, Bratlien, and Daneiel Moreci.  At all relevant times those people were acting under color of state law within the scope of their employment.

174.    Dart, Johnson, Reyes, Brown, Hudik, Puisis, Conley, Johson, Martinez, Miller, Kolnicki, Cruz, McGee, Bratlien, and Moreci created a policy or custom either written or express that is so permanent and well-settled to constitute a usage or custom with the force of law that

allowed correctional staff to violate Plaintiff Mr. Conwell constitutional and civil rights in a unreasonable manner. The course of conduct amounts to deliberate indifference and conscious disregard to Conwell safety, well-being and constitutional rights.

175. Dart, Johnsen, Bowens, Wiggins, Reyes, Brown, Hudik, Puisis, Conley, Johnson, Martinez, Miller, Kolnicki, Cruz, McGee, Bratlien and Moreci knew of this policy and either explicitly or implicitly approved it by fostering an atmosphere at the Cook County jail where correctional personnel are encourages to disregard the safety of detainees, the well being of detainees, and to harass and retaliate against detainees who file grievances and lawsuits.

176. Due to the severity of the violations of Plaintiff Mr. Conwell constitutional and civil rights and the fact that he filed numerous grievances regarding the violations of plaintiff Mr. Conwell constitutional and civil rights, defendants Dart, Johnsen, Bowens, Wiggins, Reyes, Brown, Hudik, Puisis, Conley, Johnson, Martinez, Miller, Kolnicki, Cruz, McGee, Bratlien, and Moreci either knew about the specific conduct at issue or turn blind-eye to it.

177. The course of conduct described above amounts to deliberate indifference and conscious disregard of plaintiff Mr. Conwell safety, living conditions, well-being and constitutional rights under the due process clause of the fourteenth amendment of the United States constitution an constitutes a form of cruel and unusual punishment for which the fourteenth amendment allows redress, entitling Conwell to bring this action pursuant to 42 U.S.C. 1983.

178. Moreover, the individual defendants acted with callous indifference to Mr. Conwell federally protected rights, and are thus liable of punitive damages.

179. Mr. Conwell re-alleges and incorporates the above paragraphs as if fully restated herein against Defendant Cook County and Defendant Thomas Dart in his official capacity as Sheriff of Cook County.

180. The course of conduct described above was carried out by the individual defendants. At all relevant times, Defendants were acting under color of state law within the scope of their employment with defendant Cook County or Cook County jail.

181. The course of conduct described above amounts to deliberate indifference and conscious disregard to Plaintiff Mr. Conwell safety, well being, living condition and health. As such, defendant conduct deprived Mr. Conwell of his rights under the due process clause of the fourteenth amendment of the United States Constitution and constitutes a form of cruel and unusual punishment for which the fourteenth amendment allows redress entitling Mr. Conwell to bring this action pursuant to 42 U.S.C. 1983.

"Liability of Cook County"

182. Civil rights abuse in Cook County jail is growing and spreading unchecked. In a July 11, 2008 finding letter, the United States concluded that certain conditions at the Cook County jail violated the constitutional right of pre-trial detainees confined therein. Although the United States and Cook County agreed to an agreed order requiring the Cook County Department of Corrections to implement procedures to improve conditions at the Cook County jail the abuse of detainees at the hands of officers continues as evidences by Plaintiff Mr. Conwell's allegations.

183.     There has existed an environment at the Cook County Department of Corrections in which jail officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable even in instances of egregious misconduct.

184.     The constitutional deprivation of Mr. Conwell's fourteenth amendment rights occurred as the result of:

      A.     A widespread practice of failing to properly prevent the use of excessive force and summary punishment without due process of law that is so permanent and well settled as to constitute a custom or usage of the Cook County jail; and

      B.     The future of Cook County to properly screen, train and supervise its correctional officers.

185.     these exemplary proceedings demonstrate a pattern of illegal conduct by employees of the Cook County jail going beyond Mr. Conwell's allegations herein plead that deprive citizens of their constitutionally protected rights to be free of excessive force and free of summary punishment without due process of law.

186.     Cook County's failure: (i) to properly screen its work force; (ii) to provide its officers with proper training and supervision regarding the appropriate techniques to be used in guarding pre-trial detainees; and (iii) reprimand its employees who used excessive force against detainees violated Mr. Conwell constitutionally protected rights.  Because defendant Cook County failed to properly screen, train and/or supervise its employees, defendant Cook County deprived Mr. Conwell of his right to be free from excessive force and summary punishment without due process of law. Mr. Conwell was injured as a proximate result of the defendant conduct.

28

187.     Cook County is a "person" within the meaning of 42 U.S.C. 1983.

188.     Mr. Conwell exhausted all available administrative remedies prior to bringing this suit in Federal Court.

### Prayer for Relief

Wherefore, Mr. Conwell prays that this court:

A.  Declare that the policies, practices and acts complained of are illegal and unconstitutional;

B.  Preliminary and permanently enjoin all defendants from engaging in the policies, practices, and acts complained of by Mr. Conwell in this consolidated Amended Complaint;

C.  Award Compensatory damages from all defendants in an amount to be determined at trial;

D.  Award punitive damages from all defendant in an amount to be determined at trial; and

E.  Award other such relief as this court deems appropriate.


Respectfully submitted,

James Newman

Attorneys for Plaintiff

James T. Newman
COONEY AND CONWAY
120 N. LaSalle Street
30th Floor
Chicago, Illinois 60602
(312) 236-6166
jnewman@cooneyconway.com

29