F:\INDIVIDUAL CLERKS\tl\JTN\Conwell_ps_Resp_to_D_Dart_Statement_

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONALD CONWELL, ) | |
| ) | |
| Plaintiff, ) | 12 C 10062 |
| ) | |
| vs. ) | Honorable Judge |
| ) | Ruben Castillo |
| COMMANDER J.K. JOHNSEN, et al., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT, COOK COUNTY SHERIFF THOMAS DART'S STATEMENTS OF FACTS PURSUANT TO LOCAL RULE 56.1(b)

Defendant's Statement of Facts fails to comport with Rule 56.1 as it is replete with inferences and conclusions that are presumably based on facts in the record, but are not facts themselves. Given Defendant, Cook County Sheriff Thomas Dart's ("Sheriff Dart") argumentative and non-factual presentation fails to comply with Rule 56.1, Plaintiff moves to strike Defendant Sheriff Dart's Motion for Summary Judgment. Without waiving said argument, Plaintiff responds to Defendant's statement of facts as follows:

1. Plaintiff, Donald Conwell ("Plaintiff") was a pretrial detainee at Cook County Jail in 2011 through at least October 10, 2013. Plaintiff's Third Amended Complaint ("TAC"), Dkt. 88, attached as Def. Ex. A.

**RESPONSE:** Plaintiff admits he was a pretrial detainee at the Cook County Jail in 2007 and in 2011 through October 10, 2013.

2. Tom Dart is the Sheriff of Cook County. Ex. A at paragraph 9.

**RESPONSE:** Admit.

3. Due to the nature of the claims asserted by Plaintiff, the United States District Court for the Northern District of Illinois has jurisdiction pursuant to 28 U.S.C. §1331. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2). Def. Ex. A, §§3-5.

**RESPONSE:** Admit.

4. Plaintiff alleges in his Third Amended Complaint that Individual Defendant Correctional Officers failed to protect him from attack by other inmates, used excessive force, and denied him medical attention. Ex. A at p. 12-27. Plaintiff alleges the conditions of his

1

confinement were unconstitutional and his rights under the First Amendment were violated. Ex. A at p. 27-29.

**RESPONSE:** Admit.

5. Plaintiff also alleges Sheriff Dart, as a custom, policy or practice, failed properly screen, train and/or supervise Cook County Sheriff's employees, and as a result Plaintiff was subject to excessive force by the Defendant Officers. Ex. A at paragraph 182-186.

**RESPONSE:** Admit.

6. All Defendants deny the allegations brought against them. Defendants' Answer to Plaintiff's Third Amended Complaint (DOUBLE CHECK THIRD) ("TAC"), Dkt. 98, attached as Def. Ex. B.

**RESPONSE:** Admit.

7. Plaintiff was served with interrogatories specifically related to the claims brought against Sheriff Dart, to which Plaintiff timely responded. Plaintiff's Response to Defendant Sheriff Dart's Interrogatories, attached as Def. Ex. C.

**RESPONSE:** Admit.

8. In response to Sheriff Dart's Interrogatory seeking facts and evidence in support of Plaintiff's allegation that Sheriff Dart "created a policy or custom either written or express that is so permanent and well-settled to constitute a usage or custom with the force of law that allowed correctional staff to violate Plaintiff's…Constitutional and civil rights." Plaintiff referred to Sheriff Dart to his complaint and deposition, a "2006 Department of Justice Report and pattern of complaints against Cook County by inmates." Def. Ex. C, pp. 2-3.

**RESPONSE:** Admit.

9. Plaintiff repeated this answer in response to the next two interrogatories. Def. Ex. C. pp. 3-4.

**RESPONSE:** Admit.

10. In response to Sheriff Dart's Interrogatory seeking facts and evidence in support of Plaintiff's allegation that Sheriff Dart had "a widespread practice of failing to properly prevent the use of excessive force," Plaintiff referred Sheriff Dart to his deposition, a "2006 Department of Justice Report and suits filed by inmates." Def. Ex. C, pp. 4-5.

**RESPONSE:** Admit.

11. In response to the rest of Sheriff Dart's Interrogatories, Plaintiff referred Sheriff Dart to his deposition, a "2006 Department of Justice Report" and "suits against Cook County Department of Corrections." Def. Ex. C, pp. 5-8.

**RESPONSE:** Plaintiff admits that Plaintiff referred Defendant Sheriff Dart to his deposition, the "2006 Department of Justice Report" and "suits against Cook County Department of Corrections." Plaintiff denies that that was the extent to Plaintiff's answers. In response to Defendant Dart's Interrogatory No. 12(a), Plaintiff specifically provided examples of properly supervising correctional officers, including the prevention of beating inmates, and requiring officers to follow General Orders ("G.O.'s"). In response to Interrogatory No. 12(e),

Plaintiff refers Defendant to quarterly reports of deficiencies. Plaintiff likewise refers to the Agreed Order with regard to Interrogatory No. 14.

12. None of the documents or records referenced in Plaintiff's response was attached to his responses, or otherwise produced in discovery in this case.

**RESPONSE:** Admit.

13. Plaintiff does not mention any other incidents of Cook County Sheriff Correctional Officers using excessive force or otherwise injuring a detainee other than his alleged incidents in his Complaint. Def. Ex. A. general.

**RESPONSE:** Plaintiff admits that Plaintiff explicitly refers to seven separate incidents in which Cook County Sheriff Correctional Officers used excessive force or otherwise injured the Plaintiff in his Complaint.

14. Plaintiff does not mention any other incidents of Cook County Sheriff Correctional Officers using excessive force or otherwise injuring a detainee other than his alleged incidents in his deposition testimony. Plaintiff's Deposition Transcript, attached as Def. Ex. D.

**RESPONSE:** Plaintiff admits that he refers Defendant Dart to other incidents in his deposition testimony.

### FACTS NOT PRESENTED BY DEFENDANT THAT REQUIRE DENIAL OF SUMMARY JUDGMENT [1]

1. During a period of incarceration at the Cook County Jail ("CCJ") in 2007, Mr. Conwell was severely beaten by jail officers; as a result, Mr. Conwell is wheelchair bound and has impairments to his hands and eye. (Plaintiff's Deposition ("Exhibit A"), 12:11-21).

2. Mr. Conwell filed a lawsuit regarding the beating, and as a result of this prior lawsuit, as well as numerous grievances filed during Mr. Conwell's incarceration, jail staff members developed extreme animosity toward him. As a result of this animosity, Mr. Conwell feared for his safety because officers were having him attacked or beaten up in retaliation for his prior lawsuit filed. (Exhibit A, 38:20-24).

3. In February 2012, jail guard Lieutenant N. Bowens announced in front of other inmates that Mr. Conwell was a "snitch." (Exhibit A, at 37). This occurred, while located in the dayroom in 3-west, which is regarded as general population max. (Exhibit A, 41:1-24;42:1). As a result, Mr. Conwell requested to be placed in protective custody. (Exhibit A, 38:8-24).

---

[1] Some facts presented in this Section are also contained in Plaintiff's responses to Defendant's Statement of Facts and some facts contained in Plaintiff's response are not restated in this Section.

3

4. In February 2012, Mr. Conwell was attacked by inmate Richard Brooks. (Exhibit A, 43:12-15).

5. In August 2012, Mr. Conwell filed an Emergency Grievance as a result of threats received by inmate Kevin Dawson. (Exhibit L). October 16, 2012, Commander J.K. Johnsen issued a Cook County Department of Corrections Memorandum, Division X/Cermak issuing a "Keep Separate Order" for Mr. Conwell and detainee, Henry Gibbs, and detainee, Kevin Dawson. (Exhibit B).

6. On October 25, 2012, while in the holding area, Mr. Conwell was stabbed by inmate Dawson, despite receiving several previous threats, "including telling Mr. Conwell, 'I'm going to kill you,' to which Defendants were aware. (Exhibit A, 47:2-24;48:22-24).

7. On October 25, 2012, Defendants, Sergeant Wiggins and Lieutenant Bowens signed an Inmate Disciplinary Report regarding the incident between inmate Dawson and Mr. Conwell (Exhibit C, See Inmate Disciplinary Report – Oct. 25, 2012).

8. On October 25, 2012, Sergeant Wiggins and Lieutenant Bowers were on duty and should have been the officers monitoring the holding area when Mr. Conwell was stabbed. (Exhibit D, Grievance # 2012 x 13495 – Dated 10/25/12).

9. In March 2012, Mr. Conwell was involved in a dispute with Officer Jennifer Jefferson regarding his housing assignment (Exhibit A, 109:19-24).

10. Officer Jefferson indicated to Mr. Conwell that he would be moving to the cell that [they] put people in that [they] want to punish for filing grievances. (Exhibit A, 109:10-12).

11. Prior to transferring cells, Officers Baker and Olavarria shoved the Plaintiff out of his wheelchair and put Mr. Conwell in a chokehold, rendering the Plaintiff unconscious. (Exhibit A, 114:16-22).

12. Prior to falling unconscious, Mr. Conwell was repeatedly kicked and punched by Officers Baker and Olavarria, as well as Officer Jefferson, who kicked Mr. Conwell in the face while Plaintiff was on the ground. (Exhibit A, 115:1-4; 115:15-20; 116:11-12); (Exhibit E).

13. When Mr. Conwell came to, he was handcuffed and being dragged by Officers Baker and Tiscareno to another cell. (Exhibit A 117:12-18); (Exhibit E).

14. Officer Ramonita Perez, witnessed this beating and did nothing to intervene, but instead, acted as a "lookout" (Exhibit A, 118:1-24). As a result of this beating, Mr.

Conwell lost consciousness, and suffered multiple injuries, including "blood clots in both eyes," facial bruising, and severe neck and back pain. (Exhibit A,123:24-124:15-21).

15. In December 2012, Mr. Conwell was transported to Stroger Hospital for medical treatment. (Exhibit A, 119:20-23; 120:24; 121:1-24). When it was time to transport him back to the jail, the officers transporting him would not allow Mr. Conwell access to the Jail's wheelchair-accessible van, even though the van was already at that location picking up other inmates. (*Id.*). The officers instead forced the Plaintiff out of his wheel chair so that he would fit inside the squad car. (Exhibit A, 122: 4-10). Officers Johnson and Rooney, as well as an unnamed officer (John Doe #4), were all present during this incident, and refused the Plaintiff's repeated request to be transported in the wheelchair accessible van. (Exhibit A, 120:24; 121:1-24).

16. Mr. Conwell fell to the ground and cried out for help, to which the officers began beating him (*Id.*) During this entire encounter, Plaintiff was wearing leg shackles, a waste chain, and a Taser box on his leg handcuffs and leg shackles. (Exhibit A, 126:11-15.) Officer Johnson witnessed this incident and did nothing to stop it (Exhibit A,130:9-18). The beating caused the Plaintiff to suffer a bloody nose, cuts as well as other injuries (Exhibit A, 123: 17-18).

17. Upon returning to jail, Lieutenant Martinez instructed the other officers involved in the beating to cover up the beating by stating that Plaintiff had "a little fall." (Exhibit A, 131:7-13).

18. Plaintiff requested medical care from several other officers, including Officers, Conley, Johnson, Ervin and Eppes-Davis, but his requests went ignored. (Exhibit A, 136:10-21; 137:1-3).

19. In July 2013, while receiving a breathing treatment in his cell which required the door to be slightly propped open. Officers Begley and Koch were on duty at the time, and despite knowledge of Dawson's prior attack of Mr. Conwell and despite knowing Dawson and Mr. Conwell were to be kept apart (Exhibit B), Dawson managed to get close enough to plaintiff's cell door spitting on the Plaintiff. (Exhibit A, 79-81).

20. When Mr. Conwell reported this to Sergeant Kolnicki, Sergeant Kolnicki merely laughed. (Exhibit A, 86:15-24).

21. In October 2013, Plaintiff was forced by Officer Begley to enter inmate David Miller's cell in order to have access to a phone. Despite inmate Miller being known as

5

a racist and violent inmate and despite Mr. Conwell voicing his concern to Officer Begley that he did not feel safe around inmate Miller, Officer Begley ignored his concerns and forced him into inmate Miller's cell anyway. (Exhibit A, 89:22-24; 92:14-24; 93:1).

22. Inmate Miller then began to attack Mr. Conwell, cutting and scratching him on the face, pulling him out of his wheel chair, causing injuries to his arm, back and hip. (*Id.*) Officer Begley and Officer Bailey then delayed removing Mr. Conwell from the cell, prolonging the attack. (Exhibit A, 93:3-8; 94:16-21).

23. Despite being aware of the injuries Mr. Conwell sustained as a result of this October 2013 attack, Commander Hudik, Sergeant Cruz, Sergeant McGee, and Officer Ortell delayed sending the Plaintiff for medical treatment for over two hours. (Exhibit A, 102:16-17).

24. Mr. Conwell was also subjected to substandard living conditions of confinement during his time at Cook County Jail. (Exhibit A, 138:1-24).

25. In March 2012, Mr. Conwell was forced to live in a cell that was not handicap accessible (Exhibit A, 138:6-10).

26. The non-handicap accessible cell, was kept at an excessively cold temperature, lacked hot water, and had broken or leaking pipes. (Exhibit A:138:1-24). Plaintiff wrote several grievances complaining of these issues (Exhibit A;140:10-22).

27. Mr. Conwell was diagnosed with syingomyella/SCI resulting from the 2007 prison guard incident. (Exhibit F).

28. A person in protective custody is treated differently than those in the general population. Inmates in protective custody are not let out at the same time. They may be in the same cell with a regular population, that they can get along with, but [we] do not let them out in the general day room together. (Exhibit G, Deposition of Lieutenant, Nathan Bowens, 8:2-8).

29. On February 6, 2012, while already in protective custody, Mr. Conwell requested continued protective custody, filing out the appropriate placement for protective custody form). (Exhibit G).

30. Inmates being housed in segregation cells, like Mr. Conwell, did not have workable phones in the cell due to being in segregation. If Mr. Conwell needed use the phone, "he would go into David Miller's room, and David Miller would let him use his phone. (Exhibit H, Deposition of Officer Carol Begley, 11:2-9.)

31. In a July 11, 2008 letter from the U.S. Department of Justice addressed to Defendant Sheriff Dart, along with the accompanying Department of Justice Report of Investigative Findings (Exhibit I), an additional area of policy concern is with regard to special management units, which include ***protective custody units. Generally accepted correctional practices require that officers who are assigned to these types of units possess a high level of detention experience, receive focused training in special management operations, and are regularly assigned to these units for stability purposes. Correctional officers in CCJ's special management units rotate on a regular basis and do not receive specialized training for working with high risk inmates. This practice should be changed at the policy level. (Exhibit I, pg. 37).

32. Pursuant to Agreed Order (Exhibit J), (U.S. v. Cook County, Illinois; Thomas Dart, Cook County Sheriff (in his official capacity); et al.,) Section 46- Emergency Care – (b) CCDOC shall train correctional officers to recognize and respond appropriately to health care emergencies, including: (1) medical emergencies. Section 46(c) CCDOC shall ensure that all inmates with emergency health care needs receive prompt transport, including transport for outside care, for emergencies including: (1) medical emergencies. (Exhibit J).

33. Pursuant to Agreed Order above, Section 46(e), correctional officers are to be trained to provide first responder assistance (including "CPR" and addressing serious bleeding) in emergency situations. (Exhibit J).

34. Pursuant to Agreed Order above, Section G – Sanitation and Environmental Condition, subsection 83(d & e) CCDOC shall notify DFM, in a timely manner, of routine and emergency maintenance needs, including plumbing, lighting, and ventilation problems. DFM shall ensure adequate ventilation throughout the facility to ensure that inmates receive an adequate supply of air flow and reasonable levels of heating and cooling. (Exhibit J).

35. CCDOC shall ensure adequate pest control through the housing units ***CCDC shall maintain a contract for professional exterminator services for each division, food services area, and the Cermak hospital. Services should provide for routine pest control spraying and additional spraying *as needed. Agreed Order, Section G, subsection 83(h). (Exhibt J).

36. Sheriff's Office, Cook County, Illinois, Sheriff's Order No. 11.2.2.0, issued May 23, 2011, effective September 19, 2011 – "Response to Resistance/Use of Force Duties,

Notifications and Reporting Procedures – Under Subsection One – The purpose of this Order establishes the Cook County Sheriff's Office (CCSO) duties, notifications, and reporting procedures for a response to resistance/use of force incident. (Exhibit K).

37. Sheriff's Office, Cook County, Illinois, Sheriff's Order No. 11.2.2.0, - Section X. This Sheriff's Order is applicable to CCSO employees as outlined in Section XI. Supervisors shall review the contents of this order with all employees under their supervision as appropriate, and ensure the provisions as outlined are strictly adhered to. Section XI – This Sheriff's Order shall be distributed to the following CCSO Departments and Units including: CCDOC, all divisions and all units (See Exhibit K, pg. 11).

38. Pursuant to Agreed Order, Section 34 – "Incidents and Referrals" – subsection (d) – CCDOC shall require prompt administrative review of incident reports. Such reviews shall include a case-by-case review of individual incidents as well as a systemic review in order to identify patterns of incidents. CCDOC shall incorporate such information into quality management practices and take necessary corrective action.

39. Pursuant to Agreed Order, Section 38(b), labeled – "Inmate Grievance Procedure" - "CCDOC shall ensure that the grievances receive appropriate follow-up, including informing the grievant of the outcome, providing a timely written response, and tracking implementation of resolutions. (Exhibit J).

40. Pursuant to Agreed Order, Section 40 – "CCDOC shall provide training and supervision to all correctional officers and supervisors sufficient to implement the provisions of this Agreed Order." (Exhibit J, pg. 19).

Respectfully Submitted,

/s/ James T. Newman

James T. Newman
Attorney for the Plaintiff

James T. Newman
120 N. LaSalle Street, 30th Floor
Chicago, IL 60602
(312) 636-6166
Attorney No.: 90200
jnewman@cooneyconway.com

## EXHIBITS IN SUPPORT OF PLAINTIFF'S RESPONSE
## IN OPPOSITION TO SUMMARY JUDGMENT

| | |
|---|---|
| Exhibit A | Plaintiff's Deposition |
| Exhibit B | Cook County Sheriff's Department of Corrections Memorandum – 10/16/12 |
| Exhibit C | Disciplinary Report – 10/25/12 |
| Exhibit D | Grievance No. 2012 x 13495 – 10/25/12 |
| Exhibit E | Witness Affidavit |
| Exhibit F | Plaintiff's Medical Diagnosis |
| Exhibit G | Deposition Transcript of Lieutenant Nathan Bowens |
| Exhibit H | Deposition Transcript of Officer Carol Begley |
| Exhibit I | Department of Justice Letter and Accompanying Investigative Report |
| Exhibit J | Agreed Order |
| Exhibit K | Sheriff's Order No. 11.2.2.0 – 5/23/11 |
| Exhibit L | Emergency Grievance – 8/2012 |

**DONALD CONWELL V. COMMANDER J.K. JOHNSEN, et al.**